**Grant MORRIS, Appellant,**

v.

**JTM MATERIALS, INC. and DCV, Inc., Appellees.**

Nos. 2–00–293–CV, 2–00–365–CV.

Court of Appeals of Texas,
Fort Worth.

April 11, 2002.

Rehearing Overruled July 18, 2002.

Queenan Law Firm, Britta J. Gordan and M. Kevin Queenan, Desoto, Law Office of W. Allyn Hoaglund, Allyn Hoaglund, Houston, and Law Office of Lindy Borchard and Lindy Borchard, Fort Worth, for Appellant.

Fox, Conner & Snelson, Teresa Guerra Snelson and Steven Snelson, Dallas, for Appellee.

PANEL B: DAUPHINOT, HOLMAN, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. Introduction

In this motor carrier liability case, the primary issue we must decide is whether a licensed motor carrier who leases equipment from an unregulated owner for the transportation of goods is vicariously liable as a matter of law for the negligence of the equipment driver. We must also decide

whether the trial court properly granted JTM Materials, Inc. and DCV, Inc. summary judgment on Grant Morris's other claims based on vicarious liability, respondeat superior, various theories of direct liability, and joint enterprise and joint venture. Because we hold that an interstate motor carrier is vicariously liable as a matter of law for the driver's negligence under the Federal Motor Carrier Safety Regulations, and that the trial court improperly granted JTM and DCV summary judgment on some of Morris's other claims, we will reverse the trial court's judgment in part and remand those claims to the trial court. We will affirm the remainder of the trial court's judgment.

## II. Background Facts and Procedural History

In November 1996, Morris was injured when his vehicle was involved in an accident with a tractor-trailer operated by Jerry Lee Largent. The accident occurred at 11:40 p.m. on a Saturday night. At the time of the collision, Largent was intoxicated. He later pleaded guilty to the offense of driving while intoxicated.

The vehicle that Largent was driving at the time of the accident belonged to Hammer Trucking, Inc. Several months before the accident, in June 1996, Hammer Trucking and JTM Materials, Inc. had entered into an equipment lease agreement under which JTM leased the tractor-trailer from Hammer Trucking. Hammer Trucking used the tractor-trailer exclusively for JTM.

After the agreement was signed, Dan Lindsey, JTM's safety director, conducted a background check on Largent, who had applied to drive the leased equipment for JTM. Largent was also administered a drug screening test, which he passed. Based on the background check and drug screening test results, JTM determined that Largent was qualified to drive the tractor-trailer for JTM. However, under the equipment lease agreement, Hammer Trucking was responsible for paying Largent.

After the accident occurred, Morris sued JTM and DVC, Inc.[1] for negligent hiring, retention, and supervision of Largent, negligent entrustment, negligent failure to restrict Largent's access to the tractor-trailer after ordinary business hours, and negligent failure to prevent Largent from driving the truck after ordinary business hours. Morris also contended that Largent was JTM's statutory, actual, constructive, or borrowed employee and sought to recover from JTM under the Federal Motor Carrier Safety Regulations (FMCSR) and respondeat superior and borrowed servant doctrines. Finally, Morris sought recovery under joint enterprise, civil conspiracy, and vicarious liability theories.

JTM moved for a no-evidence summary judgment on Morris's respondeat superior, joint venture, joint enterprise, and civil conspiracy claims and filed a traditional summary judgment motion on Morris's direct and vicarious liability claims.

In response to JTM's summary judgment motions, Morris contended that the tractor-trailer "belonged to JTM" by virtue of the exclusive lease JTM had with Hammer Trucking and that JTM had a nondelegable duty to exercise control over the equipment. Morris also contended that JTM was subject to the FMCSR governing interstate motor carriers and was therefore vicariously liable as a matter of

1. Morris also sued Largent and Hammer Trucking, but his claims against them are not the subject of this appeal because the trial court severed out all of Morris's claims against JTM and DCV from those against Largent and Hammer Trucking.

law for Largent's negligence. Morris asserted that the traditional common-law doctrines governing the master-servant relationship and the doctrine of respondeat superior did not apply to interstate motor carriers subject to the FMCSR, such as JTM. Finally, Morris contended that JTM was also liable for Largent's actions because of a right-to-control provision in the equipment lease, which provided that, in order to comply with article 6701c–1 of the Texas Revised Civil Statutes, the operation of the tractor-trailer would be under JTM's control and supervision.

■ As evidence that JTM was an interstate motor carrier, Morris relied on JTM's answers to interrogatories, in which JTM stated that its policy for testing, investigating, and hiring drivers was to "comply with applicable U.S. Department of Transportation Regulations" and referenced parts 382 and 391 of the FMCSR. JTM also stated that it was "subject to DOT audits" and that, to the extent drivers' logs and trip receipts were required of JTM, "its policy [was to] comply with the requirements of the U.S. Department of Transportation Regulations." [2]

In reply to Morris's response, JTM filed the affidavit of Paul Don Hammer, Hammer Trucking's owner. Hammer stated in his affidavit that he was responsible for the tractor-trailer when it was not being used to haul aggregate materials for JTM. Hammer further stated that, at the time of the collision, Largent was not carrying out any employment duties for Hammer Trucking or JTM, the tractor-trailer was empty and had not been dispatched by Hammer Trucking or JTM to transport materials for JTM or anyone else, and Largent was never dispatched to haul aggregate materials at night. Aside from Hammer's affidavit, JTM did not file a reply to Morris's response to the motions for summary judgment.

■ The trial court granted a general summary judgment for JTM that did not state the ground or grounds for the judgment. Consequently, we must affirm the summary judgment if any of the theories that JTM advanced are meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).[3]

### III. Standards of Review

#### A. Traditional Summary Judgment

A defendant is entitled to a traditional summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to

---

**2.** In its reply brief on appeal, Morris also states that JTM has a DOT number, which is 465856. Although JTM does not contradict this factual allegation, *see* TEX.R.APP. P. 38.1(f), Morris does not direct us to a place in the summary judgment record where this evidence was presented to the trial court. Accordingly, we cannot consider it. *See* TEX.R. CIV. P. 166a(c) (providing that summary judgment must be based on the evidence before the trial court at the time the judgment is rendered).

**3.** Morris asserts that the trial court opined that Largent was not in the furtherance of JTM's business when the accident occurred. The trial court did not make this statement until the motion for new trial hearing on September 21, 2000, well after the summary judgments were granted in July and August 2000. Moreover, where, as here, the trial court grants a general summary judgment, we are bound by the standard stated above.

the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

## B. No–Evidence Summary Judgment

■ After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for a no-evidence summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; In re Mohawk Rubber Co.,* 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, orig. proceeding). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) cmt.; *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 71 (Tex.App.-Austin 1998, no pet.).

■ A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, pet. denied); *Moore,* 981 S.W.2d at 269. We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.

1994). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore,* 981 S.W.2d at 269.

## IV. Vicarious Liability

### A. Statutory Employee

In his first point on appeal, Morris asserts that the trial court erred in granting JTM summary judgment on Morris's claims based on respondeat superior and vicarious liability theories. Morris contends that under the FMCSR when the accident occurred Largent was the statutory employee of JTM,[4] an interstate motor carrier, and therefore JTM is vicariously liable as a matter of law for Largent's negligence.

JTM contends Largent cannot be considered to have been its statutory employee because, at the time of the accident, he was not performing work under the equipment lease agreement or acting in the furtherance of JTM's business. However, as we discuss below, Largent's status as JTM's statutory employee under the FMCSR is not determined by whether Largent was performing work for JTM when the accident occurred. Instead, Largent was JTM's statutory employee if JTM was an interstate motor carrier who had entered into an equipment lease agreement with Hammer Trucking.

■ During the first half of the twentieth century, interstate motor carriers attempted to immunize themselves from liability for negligent drivers by leasing trucks and nominally classifying the drivers who operated the trucks as "independent contractors." *See White v. Excalibur*

---

4. DCV is a holding company that conducts no business and has no assets or employees. Also, DCV is not a party to the equipment lease agreement. For ease of reading, we refer to JTM and DCV, where applicable in this opinion, as "JTM."

*Ins. Co.,* 599 F.2d 50, 52 (5th Cir.1979), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *see also Am. Trucking Ass'ns v. United States,* 344 U.S. 298, 304–05, 73 S.Ct. 307, 311–12, 97 L.Ed. 337 (1953) (detailing pre-amendment problems and abuses that threatened public interest and vitality of trucking industry); *Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.,* 868 F.2d 357, 362 (10th Cir.1989) (same). In order to protect the public from the tortious conduct of the often judgment-proof truck-lessor operators, Congress in 1956 amended the Interstate Common Carrier Act to require interstate motor carriers to assume full direction and control of the vehicles that they leased "as if they were the owners of such vehicles." [5] *Price v. Westmoreland,* 727 F.2d 494, 495–96 (5th Cir.1984); *Simmons v. King,* 478 F.2d 857, 866–67 (5th Cir.1973); *Wirtz v. Dependable Trucking Co.,* 260 F.Supp. 240, 243 (D.N.J.1966). The purpose of the amendments to the Act was to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially responsible defendants. *See Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.,* 930 F.2d 258, 261 (2nd Cir.1991); *Empire Fire & Marine Ins. Co.,* 868 F.2d at 362; *Al-*

*ford v. Major,* 314 F.Supp. 979, 983 (N.D.Ind.1970), *aff'd,* 470 F.2d 132 (1972); *Wirtz,* 260 F.Supp. at 243; *Graham v. Malone Freight Lines, Inc.,* 948 F.Supp. 1124, 1132 (D.Mass.1996), *clarified on reconsid.,* 43 F.Supp.2d 77, *aff'd,* 201 F.3d 427, 1999 WL 1338356; *see also Transam. Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.,* 423 U.S. 28, 36, 96 S.Ct. 229, 233, 46 L.Ed.2d 169 (1975) (stating that ICC developed and designed its responsibility-and-control regulations to prevent a sharing of authority under the guise of an equipment lease). As a result of the regulatory authority granted in the Act, the Interstate Commerce Commission (ICC) [6] issued regulations that require a certificated interstate carrier who leases equipment to enter into a written lease with the equipment owner providing that the carrier-lessee shall have exclusive possession, control, and use of the equipment, and shall assume complete responsibility for the operation of the equipment, for the duration of the lease. 49 C.F.R. §§ 376.11–.12 (2000); *Price,* 727 F.2d at 496 & n. 2 (applying predecessor to part 376). These regulations are known as the Federal Motor Carrier Safety Regulations. 49 C.F.R. subch. B (2000).

▬ Because under the FMCSR interstate motor carriers have both a legal right and duty to control leased vehicles operated for their benefit, the regulations create a statutory employee relationship between the employees of the owner-les-

---

**5.** Act of Aug. 3, 1956, Pub.L. No. 84–957, 1956 U.S.C.C.A.N. 1163 (current version at 49 U.S.C.A. § 14102(a)(4) (1997)). The current version of the statute contains the same requirement, but it is worded a little differently. It requires carriers to assume full direction and control of the leased vehicles "as if the motor vehicles were owned by the motor carrier." 49 U.S.C.A. § 14102(a)(4).

**6.** Effective January 1, 1996, the ICC was abolished and its functions were transferred to the

Surface Transportation Board, which is a part of the U.S. Department of Transportation. 49 U.S.C.A. §§ 701(a), (b)(4), 702 (West 1997 & Supp.2001). Any reference to the ICC in any other federal law, rule, or regulation is now deemed to refer to the Surface Transportation Board, one of its members or employees, or the U.S. Secretary of Transportation. *Id.* § 701 historical note; *see also* ICC Termination Act of 1995, Pub.L. No. 104–88, § 205, U.S.C.C.A.N. (109 Stat.) 943.

sors and the lessee-carriers. *White,* 599 F.2d at 52–53; *see also Meyers v. Norton Ramsey Motor Lines, Inc.,* No. 4:96CV324–D–B, 1997 WL 170308, at *3 (N.D.Miss.1997) (recognizing that ICC regulations create statutory employee relationship between ICC carrier and drivers and equipment covered by lease agreement). The FMCSR preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle. *Price,* 727 F.2d at 496; *see also Planet Ins. Co. v. Transport Indem. Co.,* 823 F.2d 285, 288 (9th Cir.1987) ("We rely on the federal statutory and regulatory scheme to decide the issue of authorized carrier responsibility."); *Simmons,* 478 F.2d at 866 ("[I]t is critical that ICC regulations and the leases mandated by them have supreme, controlling significance."). Thus, an interstate motor carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common-law doctrines of the master-servant relationship and respondeat superior. Instead, an interstate carrier is vicariously liable as a matter of law under the FMCSR for the negligence of its statutory employee drivers. *See, e.g., Empire Indem. Ins. Co. v. Carolina Cas. Ins. Co.,* 838 F.2d 1428, 1433 (5th Cir.1988); *Planet Ins. Co.,* 823 F.2d at 288; *Price,* 727 F.2d at 496; *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.,* 722 F.2d 1400, 1404 (8th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2155, 80 L.Ed.2d 540 (1984); *Rodriguez v. Ager,* 705 F.2d 1229, 1233–36 (10th Cir.1983); *Simmons,* 478 F.2d at 867; *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 476–77 (3rd Cir.1961); *see also N. Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 114 (Tex.App.-Beaumont 2001, pet. filed) (holding that interstate motor carrier was statutory employer of employees of moving company from whom carrier leased equipment and owed a duty of care directly to driving public) (citing *White,* 599 F.2d at 50).

■ In its statement of facts, JTM asserts, for the first time, that it is not an interstate motor carrier. This argument was not raised in the trial court as a basis for summary judgment. Also, as we have discussed, the statutory employee doctrine is a doctrine of vicarious liability. JTM moved for a traditional summary judgment on Morris's vicarious liability claims on the grounds that Largent was not JTM's employee and that JTM did not exercise control over Largent or his employer. However, JTM did not move for summary judgment on the basis that it was not vicariously liable for Largent's negligence because it was not an interstate carrier. Summary judgment cannot be granted except on the grounds expressly presented in the motion. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997). Accordingly, in reviewing the propriety of the summary judgment for JTM on Morris's vicarious liability claims, we cannot consider JTM's claim that summary judgment was proper because it was not an interstate motor carrier.

JTM also contends that its right-to-control provision in the equipment lease agreement only applied when Hammer Trucking and its driver-employees were transporting goods or materials for JTM or otherwise furthering JTM's business. The provision does not contain any such limiting language, however; it merely provides that it will not "invalidate [or] diminish" the provisions in the lease pertaining to Hammer Trucking's independent contractor status.

■ There are provisions in the equipment lease agreement that JTM contends limit its right to control the leased

equipment and drivers and that establish Hammer Trucking's independent contractor status. But "one holding a certificate or permit authorizing him to operate a motor carrier over the highways of the State may not delegate to another the rights conferred by such certificate or permit and then release himself from liability to those injured by the negligence of the wrongfully delegated party." *Berry v. Golden Light Coffee Co.,* 160 Tex. 128, 327 S.W.2d 436, 439 (1959); *see also Wardlow v. Newberry,* 319 S.W.2d 437, 442 (Tex.Civ. App.-Eastland 1958, no writ) (same). In addition, an interstate motor carrier cannot avoid liability to third parties by stipulating that the owner of the leased equipment is an independent contractor. *See Perry v. Harco Nat'l Ins. Co.,* 129 F.3d 1072, 1074 (9th Cir.1997) (noting that one purpose of the Act was to protect members of the public from carriers' attempts to escape liability for drivers' negligence by claiming the drivers were independent contractors). Under the FMCSR, even if the owner-lessor is an independent contractor, the lease must still provide that the carrier-lessee will assume complete responsibility for the operation of the equipment and have exclusive possession, control, and use of the equipment during the lease term. *See* 49 C.F.R. § 376.12(c)(4) (2000) ("Nothing in the provisions required by [the paragraph governing control provisions] is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements."). Also, the FMCSR provide that only an interstate carrier of household goods may limit the control provisions in the lease to the time the equipment is operated by or for the authorized carrier-lessee. *Id.* § 376.12(c)(3). JTM

used the leased equipment to transport aggregate materials, not household goods.

JTM also contends that, even if Largent was its statutory employee, JTM was not vicariously liable for Largent's negligence unless Largent was performing work for JTM at the time of the accident. In other words, JTM would have us hold that an interstate carrier is only vicariously liable for a statutory employee-driver's negligence if an employer would be liable for the driver's negligence. JTM relies primarily on *White,* 599 F.2d at 50, *Mata v. Andrews Transport, Inc.,* 900 S.W.2d 363 (Tex.App.-Houston [14th Dist.] 1995, no writ), and *Barbour Trucking Co. v. State,* 758 S.W.2d 684 (Tex.App.-Austin 1988, writ denied), as support for its position. *White* is a workers' compensation case whose holding has been limited to its facts, and we decline to follow *Barbour* or *Mata.*

In *White,* the employee of an equipment owner who had leased the equipment to an interstate motor carrier was killed while sleeping during his rest period when his partner was driving. 599 F.2d at 51–52. The Fifth Circuit concluded that the deceased employee was the motor carrier's statutory employee and was therefore entitled to recover under the motor carrier's workers' compensation policy. *Id.* at 53. The court further concluded, however, that the employee was not a member of the "public" and therefore could not recover under the Act. *Id.* at 55–56. *But see Proctor v. Colonial Refrig. Transp., Inc.,* 494 F.2d 89, 91–92 (4th Cir.1974) (holding carrier liable for co-employee's injuries caused by driver's negligence).

The Fifth Circuit has limited this holding to incidents involving co-employees who can recover for their fellow employees' negligence under workers' compensation laws. *See Price,* 727 F.2d at 497 (noting limitation of *White* holding); *see also Judy v. Tri–State Motor Transit Co.,*

844 F.2d 1496, 1500–03 (11th Cir.1988) (discussing same). In *Price*, decided several years after *White*, the Fifth Circuit reaffirmed the rule that an interstate carrier is vicariously liable as a matter of law for a driver's negligence and that the traditional common-law principles of the master-servant relationship and the doctrine of respondeat superior do not apply. *Price*, 727 F.2d at 496. The *Price* court also cited with approval several opinions from other jurisdictions that have held that an interstate motor carrier is liable for the negligence of a driver who uses the leased equipment for personal use. *Id.* at 497 n. 6 and cases cited therein.[7]

*Barbour* relies directly on *White* for the proposition that, because the statutory employee principle imposes liability upon the carrier "as if" it actually or literally employed the negligent driver, the interstate motor carrier is permitted to raise any defenses available to such an employer under state law. 758 S.W.2d at 688. As we have noted, however, *White* is limited to situations involving injuries to a co-employee of the driver. We do not have that situation here.

Further, *Barbour* involved an equipment interchange agreement, not an equipment lease agreement. 758 S.W.2d at 686. The *Barbour* court noted that equipment interchange agreements are not subject to the same regulations as equipment lease agreements, the most notable difference being that an equipment interchange agreement is not required to include a written lease provision that the lessee must have exclusive possession, control, and use of the equipment, and assume complete responsibility for its operation, for the duration of the lease. *Id.* at 686–87 & n. 4; *see also Simmons*, 478 F.2d at 864–65 & n. 20 (noting differences between equipment lease agreement and equipment

interchange agreement, in particular, that interchange of equipment occurs between two interstate motor carriers, not between interstate carrier and unregulated equipment owner).

The accident in *Mata* occurred while the driver was commuting (in the leased vehicle) from his home in Austin to the interstate motor carrier's shipping yard in Houston. 900 S.W.2d at 366. The *Mata* court noted the presumption that an employee is within the course and scope of employment while traveling to and from work if the employer owns the vehicle and regularly employs the driver. *Id.* But the court held that this presumption was inapplicable because the interstate motor carrier did not own the truck involved in the collision. *Id.* We decline to follow this reasoning in light of the plain statutory language that the motor carrier's control of and responsibility for the leased equipment is, under section 14102, "as if the motor vehicles were owned by the motor carrier." 49 U.S.C.A. § 14102(a)(4).

JTM also asserts that the cases in which an interstate motor carrier has been held vicariously liable for a driver's negligence have involved accidents that occurred while the driver was in the course and scope of his employment. *See Price*, 727 F.2d at 495 (driver was transporting goods for motor carrier at time of accident in which passenger, whom driver had no authority to transport, was injured); *Simmons*, 478 F.2d at 860–61 (driver was transporting goods for motor carrier when accident occurred); *Greyhound Van Lines, Inc. v. Bellamy*, 502 S.W.2d 586, 587 (Tex.Civ.App.-Waco 1973, no writ) (driver was found by jury to have been engaged in service of motor carrier when he negligently put truck in gear while it was being serviced, causing it to injure

7. We discuss several of these cases in more detail later in this opinion. *See* op. at 41–42.

mechanic who was repairing brakes). But interstate motor carriers have also been held vicariously liable for accidents that occurred when the leased equipment was not being used for their business or benefit. *See, e.g., Planet Ins. Co.,* 823 F.2d at 286–88 (holding carrier liable, even though accident occurred while driver was en route to pick up load and before driver had affixed carrier's signs to its doors, because federal scheme did not require that loss occur while driver was in course and scope of employment or acting under common-law principles of vicarious liability); *Rodriguez,* 705 F.2d at 1230–31, 1236 (holding that interstate carrier who had leased equipment was liable for the driver's negligence, even though driver was transporting goods for equipment owner-lessor, without carrier's knowledge, when the accident occurred); *Mellon,* 289 F.2d at 475, 478 (holding that interstate carrier who had leased equipment was liable for driver's negligence, even though driver was trip-leasing[8] for equipment owner-lessor and not carrier, without carrier's specific knowledge, where carrier knew that it was owner-lessor's practice to use equipment to trip-lease for other companies when equipment was not being used by carrier); *see also Jackson v. O'Shields,* 101 F.3d 1083, 1089 (5th Cir.1996) (holding that, if equipment lease agreement had not expired, under *Price* and *Simmons* interstate motor carrier would be liable for injuries to third parties caused by driver's negligence, regardless of whether trip was on carrier's behalf); *Price,* 727 F.2d at 497 n. 6 (citing *Rodriguez* and *Mellon* with approval); *Wellman,* 496 F.2d at 132, 137 (holding that interstate carrier who had leased equipment would have been liable for negligence of driver, who was also owner-lessor, even though driver was trip-leas-ing for another company when accident occurred, if carrier had not been nonsuited from case); *Schedler v. Rowley Interstate Transp.,* 68 Ill.2d 7, 11 Ill.Dec. 541, 368 N.E.2d 1287, 1289 (1977) (holding that interstate carrier was liable for owner-driver's negligence where accident occurred while driver was driving leased equipment to his home after hauling initial load for carrier and then another load for a third party); *Rediehs Express, Inc. v. Maple,* 491 N.E.2d 1006, 1012 (Ind.Ct.App.1986) (holding that carrier was liable for driver's negligence, despite evidence that driver may have been on a personal enterprise, without carrier's knowledge or consent), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987). *But see Pace v. S. Express Co.,* 409 F.2d 331, 333–34 (7th Cir.1969) (holding, based on Indiana law rather than federal law, that carrier was not liable because driver was off duty when accident occurred); *Wilcox v. Transam. Freight Lines, Inc.,* 371 F.2d 403, 404 (6th Cir.) ("In our opinion, the I.C.C. Regulations do not impose a liability on a carrier using leased equipment greater than that when operating its own equipment."), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); *Brannaker v. Transam. Freight Lines, Inc.,* 428 S.W.2d 524, 529 (Mo.1968) (same).

 In summary, the FMCSR require that the interstate motor carrier must assume complete responsibility for the operation of the leased equipment for the duration of the lease, and the majority of courts to apply this requirement have concluded that it imposes vicarious liability on interstate carriers as a matter of law for drivers' negligence. The Fifth Circuit has not limited an interstate motor carrier's vicari-

---

8. To "trip-lease" means to haul cargoes for other companies or carriers on trips when no loads from the carrier-lessee are available.

*Wellman v. Liberty Mut. Ins. Co.,* 496 F.2d 131, 133 (8th Cir.1974).

ous liability for a driver's negligence except in the case of a co-employee covered by workers' compensation insurance and has held that the FMCSR preempt state law in tort actions in which a member of the public is injured by a leased driver's negligence. We therefore hold that, if JTM is an interstate carrier, it is vicariously liable as a matter of law for Largent's negligence in driving the vehicle on November 9, 1996. Because JTM did not negate its vicarious liability arising out of its alleged interstate motor carrier status, summary judgment for JTM on Morris's vicarious liability claims was improper.

## B. Contractual Right to Control

Even if JTM is not an interstate motor carrier, there is some evidence in the record that JTM contractually retained control over the supervision and operation of the leased equipment, thereby giving rise to a duty to third parties injured by negligent use of the equipment. The equipment lease agreement provides:

> For compliance with Article 6701 C–1, Vernon's Annotated Civil Statutes of Texas, the parties hereto agree that the operation of such vehicle shall be under the control and supervision of the Company Lessee [JTM]; however, the parties agree that this recitation shall in no manner or way invalidate nor diminish the provisions contained above pertaining to the independent contractor status

of the Owner–Operator [Hammer Trucking].

Former article 6701c–1 provided, in pertinent part:

> Sec. 2. No commercial motor vehicle nor any truck-tractor shall be operated over any public highway of this state by any person other than the registered owner thereof, or his agent, servant or employee under the supervision, direction, and control of such registered owner unless such other person under whose supervision, direction and control said motor vehicle or truck-tractor is operated shall have caused to be filed with the Department [of Public Safety] [9] an executed copy of the lease ... under which such commercial motor vehicle or truck-tractor is being operated.
>
> . . . .
>
> Sec. 4. Such lease ... as required by Section 2 of this Act shall contain or provide ... that the operation of the vehicle shall be under the full and complete control and supervision of the person other than the registered owner. ... [10]

Sections 2 and 4 of former article 6701c–1 were recodified in 1995 without substantive change [11] as sections 641.021–.022 of the Texas Transportation Code. These sections were repealed in 1997; [12] however, they were in effect when the accident occurred in November 1996.

---

**9.** Defined later on in section 2 of former article 6701c–1.

**10.** Act of May 21, 1953, 53rd Leg., R.S., ch. 209, 1953 Tex. Gen. Laws 561, 562–63, *amended by* Act of May 5, 1955, 54th Leg., R.S., ch. 273, § 1, 1955 Tex. Gen. Laws 754, 754, *amended by* Act of April 10, 1963, 58th Leg., R.S., ch. 60, § 1, 1963 Tex. Gen. Laws 108, 108 (*amended* 1981 & 1985), *repealed by* Acts of May 1 and May 24, 1995, 74th Leg., R.S., chs. 165, § 24(a), 705, § 31(a)(11), 1995 Tex. Gen. Laws 1025, 1870–71, 3719,3740.

**11.** *See* Tex. Transp. Code Ann. § 1.001(a) (Vernon 1999) (providing that transportation code was enacted as part of a "topic-by-topic revision of the state's general and permanent statute law without substantive change.").

**12.** *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, secs. 641.021-.022, 1995 Tex. Gen. Laws 1025, 1767–68, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 30.148, 1997 Tex. Gen. Laws 327, 659.

Former article 6701c–1 was enacted to eliminate any uncertainty that might otherwise exist as to who is responsible for wrongs inflicted upon the public at large through the operation on Texas highways by lessees of vehicles named in the statute. *Greyhound Van Lines,* 502 S.W.2d at 588. The statute prohibited the lessee of a commercial motor vehicle from operating the vehicle over the state's public highways unless the lease provided that the lessee would have "full and complete control and supervision" over the operation of the vehicle. *Id.* If the lease did not provide that the lessee would have exclusive possession, control, and use of the leased equipment, the required statutory clause was deemed a part of the lease contract as a matter of law. *Id.*

In this case, the lease specifically states the parties' agreement that JTM will control the operation and supervision of the leased equipment to the extent necessary to comply with former article 6701c–1. By the very terms of the equipment lease agreement, then, JTM not only retained the right, but assumed the duty to fully and completely control operation and supervision of the leased equipment.

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex.2001) (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1965)). The Texas Supreme Court has applied this principle to premises owners and general contractors, holding that these individuals can contractually retain the right to control an aspect of an independent contrac-

tor's work so as to give rise to a duty of care to the independent contractor's employees. *See id.* (general contractor); *Pollard v. Mo. Pac. R.R. Co.,* 759 S.W.2d 670, 670 (Tex.1988) (op. on reh'g) (premises owner). It is the right of control, and not the actual exercise of control, that gives rise to a duty to see that an independent contractor performs work in a safe manner. *Pollard,* 759 S.W.2d at 670.

At least one Texas court has also applied this principle to a motor carrier's liability to the public. *See Greyhound Van Lines,* 502 S.W.2d at 588. In *Greyhound,* the Waco Court of Appeals held that a motor carrier who had agreed in an equipment lease agreement that it would have "full and complete control and supervision" over the operation of the leased vehicle was liable to a third party injured by the driver of the vehicle. *Id.* Further, the transportation code provides that "the duties and liabilities of a carrier in this state and the remedies against the carrier are the same as prescribed by the common law" unless otherwise provided by the transportation code or other law. TEX. TRANSP. CODE ANN. § 5.001(a)(1) (Vernon 1999).

By providing that operation of the leased equipment would be under JTM's control and supervision for purposes of complying with former article 6701c–1, the equipment lease agreement in effect provided that JTM would have full and complete control of the equipment's operation and supervision. Elsewhere, the lease agreement provides that JTM will have no control over the discharge or compensation of Hammer Trucking's employees or over the services they perform, except that the "operators" (drivers) shall meet JTM's minimum qualifications for operators, and Hammer Trucking shall abide by all of JTM's "policies regarding the operation of the equipment and safety rules, regulations and policies." The lease also gives

Hammer Trucking the responsibility for all "details regarding the operation of the leased equipment," including deciding which routes to use to haul materials for JTM and operating in compliance with all applicable laws and safety regulations.

 Construing these terms, as we must, according to their plain grammatical meaning[13] and giving effect to all provisions so that none will be rendered meaningless,[14] we conclude that both JTM and Hammer Trucking contractually retained the right to control the operation and supervision of the leased equipment.

 JTM points to evidence in the record that Hammer Trucking retained sole possession of the equipment, including its keys, and that Hammer Trucking actually controlled the equipment when it was not being used to transport goods for JTM. However, as we have previously stated, it is the right to control, not actual control, that gives rise to a duty to third parties. *Pollard,* 759 S.W.2d at 670. In addition, a motor carrier licensed to operate in Texas cannot contract away its right to control the drivers who transport its goods in order to escape liability for injuries the drivers may negligently cause to others. *Wardlow,* 319 S.W.2d at 442. Because the contract gives both JTM and Hammer Trucking the right and responsibility to control supervision and operation of the leased equipment, the trial court erred in granting JTM summary judgment on Morris's vicarious liability claims on the basis that JTM did not exercise control over Largent or Hammer Trucking. We sustain Morris's first point as it pertains to his vicarious liability claims.

## C. Morris's Motion for Partial Summary Judgment

Morris moved for a partial summary judgment that JTM was vicariously liable for Largent's negligence under the state and federal motor carrier safety regulations. The trial court denied Morris's motion. In his first point, Morris also asks this court to render judgment that JTM is vicariously liable as a matter of law for Largent's negligence under the FMCSR.

 When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

 Because Morris was the summary judgment movant, he bore the burden of establishing his entitlement to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). The summary judgment record contains some evidence that JTM is an interstate motor carrier, *see* op. at 36, but it does not conclusively establish that JTM is an interstate carrier. Thus, Morris did not prove his entitlement to summary judgment that JTM is vicariously liable as a matter of law for Largent's negligence under the FMCSR, and the trial court did not err by denying summary judgment on that basis.

---

**13.** *See DeWitt County Elec. Coop. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999) (stating that the language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent).

**14.** *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 132 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd).

■ Morris also urges us to look to federal law as a guide in interpreting former article 6701c–1 and to hold that JTM is vicariously liable as a matter of law for Largent's negligence under the state statute. When the Texas Legislature adopts a statute with wording substantially similar to a federal statute, courts presume, absent some indication to the contrary, that the legislature intended to adopt the construction placed on the adopted wording by the federal courts, and Texas courts look to federal cases as a guide in interpreting the state statute. *See City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 360 (Tex.2000); *Blackmon v. Hansen,* 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943); *S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 457 (Tex.App.-Corpus Christi 2000, no pet.); *see also Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 497 (Tex.2001) (stating that, when the Texas Legislature looks to another jurisdiction's statute, but modifies rather than adopts some of its provisions, it does so purposefully).

The right-to-control provision in section 4 of former article 6701c–1 was enacted in 1953, and the last amendment to that provision occurred in 1955.[15] In contrast, the right-to-control provisions in the federal statute were not added until 1956.[16] Because the provisions in the Texas statute predate their federal counterpart, we cannot presume that the Texas Legislature intended to adopt the construction placed on the wording by the federal courts. In addition, the wording in the state and federal statutes is not identical. Former article 6701c–1 required "that the operation of the [leased] vehicle shall be under the full and complete control and supervision" of the lessee-motor carrier.[17] The 1956 amendments to the Act required interstate motor carriers to "have full direction and control" of the leased vehicles "as if they were the owners of such vehicles."[18]

■ Because there are no Texas state-law cases construing former article 6701c–1 as providing that a motor carrier who leases trucking equipment is vicariously liable as a matter of law for the negligence of the equipment driver, we decline to impose such broad liability here. We hold that the trial court did not err by denying Morris's motion for a summary judgment that JTM is vicariously liable as a matter of law under former article 6701c–1 for Largent's actions. We overrule the portion of Morris's first point in which he complains that the trial court improperly denied his motion for partial summary judgment on vicarious liability.

## V. Respondeat Superior

JTM moved for a no-evidence summary judgment on Morris's respondeat superior claims on the ground that there was no evidence that, at the time of the accident, Largent was acting for or on behalf of JTM or was subject to JTM's control. In his first, third, and fifth points, Morris contends there is a material fact issue concerning whether Largent was in the course and scope of his employment when the accident occurred. Morris contends the evidence shows that, when the accident occurred, Largent was driving the tractor-trailer to Hammer Trucking's shop for maintenance at Hammer's instruction. Morris asserts that maintenance of the

---

15. *See* Act of May 21, 1953, 53rd Leg., R.S., ch. 209, 1953 Tex. Gen. Laws 561, 562–63, *amended by* act of May 5, 1955, 54th Leg., R.S., ch. 273, § 1, 1955 Tex. Gen. Laws 754, 754.

16. *See* note 5.

17. *See* op. at 43.

18. *See id.* at 38.

leased equipment was JTM's nondelegable responsibility under both the state and federal motor carrier safety regulations.

JTM asserts that maintenance of the equipment was Hammer Trucking's responsibility, not JTM's, based on the provisions in the equipment lease agreement. The equipment lease agreement provides that Hammer Trucking has the duty to properly maintain the equipment to JTM's satisfaction, at Hammer Trucking's sole cost and expense. However, the agreement also gives JTM the right to maintain the equipment if Hammer Trucking fails to do so and to charge Hammer Trucking for any expenses incurred. Thus, JTM contractually retained some control over maintenance of the equipment.

The record also provides some evidence that Largent was attempting to deliver the equipment for maintenance when the accident occurred. Largent stated by affidavit that, on the day of the accident, Hammer had asked him to deliver the truck for maintenance by the following morning. Largent stated that he was attempting to deliver the truck when the accident occurred.[19]

Largent's attempt to drive the equipment from his home to Hammer Trucking's maintenance yard is analogous to his driving to work. Generally, an employee is not in the course and scope of employment while traveling to and from work. *Tex. Gen. Indem. Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex.1963). There is, however, a presumption that an employee is within the course and scope of employment if the employer owns the vehicle and regularly employs the driver. *See Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971). The presumption arises from the fact of ownership of the truck and employment of the driver. *Id.* But where the evidence shows that the driver turned aside, even briefly, for a personal errand, the presumption is rebutted. *Id.* at 359; *Mitchell v. Ellis,* 374 S.W.2d 333, 335 (Tex.Civ.App.-Fort Worth 1963, writ ref'd); *see also Gant v. Dumas Glass & Mirror, Inc.,* 935 S.W.2d 202, 212 (Tex.App.-Amarillo 1996, no writ) (holding presumption vanished when employee testified that at the time he was returning from attending to his personal business of eating lunch en route to work); *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 637 (Tex.App.-San Antonio 1993, no writ) (holding, based on evidence that the driver was on a personal errand when the collision occurred, that defendant's ownership of the vehicle and employment of the driver were insufficient to raise the issue of course and scope of employment).

In this case, Largent stated in his affidavit that, instead of driving directly to Hammer Trucking's maintenance yard, he drove the tractor-trailer to his sister's house to see if she would pick him up at the maintenance yard. He was leaving his sister's house when the accident occurred. This evidence that Largent went on a per-

---

**19.** In his sixth point, Morris contends that the trial court abused its discretion by denying his motion to supplement the summary judgment record with Largent's affidavits. The record reflects that, at the hearing on Morris's motion to reconsider the summary judgment granted for JTM, and at Morris's motion for new trial hearing, the trial court admitted the affidavits into evidence and considered them in reaffirming its summary judgment for JTM and in denying a new trial. Yet, the trial court denied Morris's motion to supplement the summary judgment record. Because the trial court clearly considered Largent's affidavits in reevaluating whether its summary judgment for JTM was proper, and in denying a new trial, we likewise consider them. We ultimately hold, however, that even considering Largent's affidavits, no evidence exists of the scope and course element of Morris's respondeat superior claim. Accordingly, we do not further address Morris's sixth point.

sonal errand, from which he was returning when the accident occurred, rebuts the presumption that he was in the course and scope of his employment. "The test of liability is whether [the employee] was engaged in his master's business and not whether he purposed to resume it." *Robertson Tank Lines*, 468 S.W.2d at 360 (quoting *S.W. Dairy Prods. Co. v. De Frates*, 132 Tex. 556, 125 S.W.2d 282, 283 (1939)); *see also Gant*, 935 S.W.2d at 212.

Thus, even considering Largent's affidavit, there is no evidence in record that he was in the course and scope of his employment when the accident occurred.[20] We have previously held that, if JTM is an interstate motor carrier, JTM is vicariously liable to Morris as a matter of law under the FMCSR for Largent's negligence. Because, however, there is no evidence that Largent was in the course and scope of his employment when the accident occurred, the trial court did not err in concluding that JTM is not liable for Largent's negligence based on the common-law doctrine of respondeat superior. We overrule Morris's third and fifth points and the portion of his first point regarding respondeat superior.

## VI. Direct Liability

In his second point, Morris contends the trial court improperly granted JTM summary judgment on Morris's negligent hiring, negligent retention, negligent supervision, negligent entrustment, and negligent failure to control claims because a material fact issue exists regarding whether JTM is directly liable to Morris under these theories.

Morris contends that JTM's driver qualification policies and safety policies governing the qualification of drivers were substantially deficient and therefore did not uncover Largent's poor driving history and criminal record. Morris further contends that JTM had a nondelegable duty to exercise control over the equipment and therefore could not allow Hammer Trucking to give the equipment to just any driver and disclaim liability for the harm caused by the driver's actions.

JTM moved for a traditional summary judgment on Morris's direct liability claims on the following grounds:

- JTM did not negligently entrust the tractor-trailer to Largent.

- In qualifying and retaining Largent as a driver, JTM complied with industry, federal, and state motor carrier safety standards and did not know or have reason to know that Largent was an unlicensed, incompetent, or reckless driver.

- JTM breached no duty to Morris by not restricting Largent's after-hour access to or possession of the tractor-trailer.

- Largent's unauthorized use of the tractor-trailer was a new and independent cause of the collision that was not reasonably foreseeable by JTM. This

---

**20.** Following the summary judgment at issue in this appeal, Morris's claims against the other defendants proceeded to trial. Morris's appendix contains excerpts from Largent's trial testimony in which he stated that Hammer instructed him to have the truck at Hammer Trucking's maintenance yard by the morning of Sunday, November 10. This testimony is not part of the summary judgment record, however, and it was not given until August 14, 2000, one month after the trial court granted JTM summary judgment on Morris's respondeat superior claims. In addition, Largent's trial testimony does not support Morris's assertion that Largent was in the course and scope of his employment when the accident occurred. Largent testified that, when his sister could not give him a ride, he decided to go back home rather than driving on to Hammer Trucking's yard on the night of November 9.

new and independent cause destroyed the causal connection, if any, between JTM and the accident.

- JTM was not involved in a joint venture or joint enterprise and therefore could not be liable to Morris based on these theories.

## A. Negligent Hiring, Retention, and Supervision

■■■ An employer owes a duty to its other employees and to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others. *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 902 (Tex.App.-Texarkana 2001, no pet.); *Garcia v. Allen*, 28 S.W.3d 587, 592 (Tex.App.-Corpus Christi 2000, pet. denied). Therefore, an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 98 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 563 (Tex.App.-Dallas 1996, no writ); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.).

■■■ Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Verinakis*, 987 S.W.2d at 97. The elements of a negligence action are a duty, a breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). A motor carrier has a duty to take steps to prevent injury to the driving public by determining the competency of a job applicant to drive one of its trucks. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex.App.-Austin 1997, no writ); 49 C.F.R. §§ 391.21, 391.23 (2000). The purpose of this duty is to promote highway safety and prevent motor vehicle accidents. *Guidry*, 944 S.W.2d at 810; 49 C.F.R. § 383.1(a) (2000).

■■■ JTM argues that it cannot be held liable for negligent hiring, retention, or supervision of Largent because Largent was not JTM's employee and was not subject to JTM's control or acting in the furtherance of JTM's business when the accident occurred. Liability for negligent hiring and retention is not dependent, however, upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex.App.-Corpus Christi 1987, writ denied). Instead, the employer is liable if its negligence in hiring or retaining the unfit employee was a proximate cause of the plaintiff's injuries. *Verinakis*, 987 S.W.2d at 97–98; *Dieter*, 739 S.W.2d at 408.

Largent began transporting materials for JTM in September 1996. Hammer testified at his deposition that he hired Largent, but that he relied on JTM to conduct testing and background checks and to make sure that Largent was competent to be a driver. It is undisputed that JTM, not Hammer Trucking, made the determination that Largent was qualified as a driver for JTM. Also, Dan Lindsey, JTM's safety director, stated by affidavit that "Largent completed a written application for qualification to drive a commercial vehicle to haul aggregate materials for

JTM ... on September 16, 1996." A copy of the application is attached to Lindsey's affidavit. Largent also completed several other documents in connection with his hiring that were witnessed or reviewed and signed by Lindsey. One such document, which bears Lindsey's signature, informs one of Largent's former employers that Largent "has applied for a driver position with this Company." This is some evidence that JTM was actively involved in hiring Largent, even to the extent of holding itself out as Largent's prospective employer, and that Largent would not have been hired but for JTM's determination that he was qualified as a driver. Indeed, the equipment lease agreement does not prohibit JTM from hiring drivers for Hammer Trucking. The lease agreement only provides that JTM has no control over *discharging* employees—although Hammer testified that JTM told him to fire Largent after the accident occurred.

 As a motor carrier, JTM had a duty, in qualifying the drivers who would transport materials for it, to take reasonable precautions to prevent injury to the public by those drivers. *See Guidry,* 944 S.W.2d at 810. In addition, because JTM retained, and actually exercised, the right to control who was hired as a driver, JTM is liable if its failure to exercise reasonable care in the hiring of Largent proximately caused Morris's injuries. *See Lee Lewis Constr.,* 70 S.W.3d at 783 (holding that one who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others to whom he owes a duty to exercise reasonable care, which is caused by his failure to exercise control with reasonable care).

 The proximate cause element of negligence consists of cause in fact and foreseeability. *Doe v. Boys Clubs,* 907 S.W.2d 472, 477 (Tex.1995). The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.; Castillo,* 1 S.W.3d at 786. Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549–50 (Tex.1985).

JTM contends that it complied with industry, federal, and state motor carrier safety standards in qualifying Largent as a driver and therefore did not know or have reason to know that Largent was unlicensed, incompetent, or reckless. JTM contends that, because it complied with these standards, it cannot be held directly liable to Morris under his negligent hiring, retention, supervision, or entrustment theories.

 There is some summary judgment evidence that JTM complied with industry and statutory standards in qualifying Largent as a driver. Compliance with industry and statutory standards is evidence of the use of reasonable care, but it is not dispositive of that issue. *See Leitch v. Hornsby,* 885 S.W.2d 243, 247 (Tex.App.-San Antonio 1994) (noting that employer's compliance with industry standards was not dispositive on the issue of whether employer provided a safe workplace), *rev'd on other grounds,* 935 S.W.2d 114 (Tex. 1996); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 688 (Tex.App.-Texarkana 1991, writ denied) (noting product manufacturer's compliance with government safety standards does not automatically preclude a finding of liability), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993); *Turner v. Gen. Motors Corp.,* 514 S.W.2d 497, 505–06 (Tex.Civ.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.) (holding that federal motor vehicle safety standards were meant to supplement rath-

er than obviate negligence and products liability laws); TEX. TRANSP. CODE ANN. § 5.001(a)(1) (providing that, unless otherwise provided by transportation code or other law, carrier's duties and liabilities, and remedies against carrier, are the same as prescribed by the common law).

The summary judgment evidence shows that JTM obtained an "AMS Driver Record Report for Texas" on Largent, which stated that his driving record contained "no reported conviction or accidents" in the three years preceding September 12, 1996. Largent reported on his employment application that he had been involved in a fatality accident in November 1993, had received a speeding ticket in June 1996, and had had his driving privileges revoked for failure to provide insurance on his personal vehicle. He checked "No" in response to the question, "Have you ever been convicted of a crime?"

A Texas Department of Public Safety driving report shows that Largent was cited five times between 1982 and 1990 for driving without liability insurance. The report also shows that Largent was involved in a noninjury accident in May 1996. There is other evidence in the summary judgment record that Largent was convicted of driving while intoxicated in 1980, was convicted and sentenced to three years' confinement for possession of methamphetamine in 1984, and was charged with driving while intoxicated in February 1994, but pleaded guilty to reckless conduct and received deferred adjudication community supervision in April 1994.

▓▓▓ JTM did not obtain a copy of the DPS driving report, nor did it discover Largent's 1980, 1984, and 1994 offenses. If JTM had obtained this information, it would have known that Largent had withheld information from his employment application about his driving record and had lied about his criminal record. This evi-

dence that JTM failed to obtain a DPS driving report or conduct a criminal background check on Largent raises a fact issue concerning whether JTM exercised reasonable care in qualifying him as a driver.

JTM contends that there is no evidence that Largent committed these offenses during on-duty time or that his alcohol-related offenses involved the use of a commercial vehicle. *See* 49 C.F.R. § 391.15(c)(1)(i), (2) (2000) (defining a disqualifying offense under the FMCSR as driving a commercial motor vehicle while under the influence of alcohol or certain controlled substances and amphetamines); *Id.* § 395.2 (defining on-duty time). As a traditional summary judgment movant, however, JTM bore the burden of proof on both of these issues. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965) (holding that burden of proof is on traditional summary judgment movant). Absent the production of some evidence by JTM, Morris's burden to controvert that evidence did not arise. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (holding that, once evidence is presented that negates an element of plaintiff's claim, burden shifts to plaintiff to put on competent controverting evidence). Further, regardless of what the FMCSR may require, we believe the summary judgment evidence raises a fact issue concerning whether JTM exercised reasonable care by qualifying as a driver an individual who had committed three drug- or alcohol-related offenses, the most recent of which had occurred less than three years before the qualification, and had falsified his employment application.

Moreover, this evidence raises a fact issue concerning whether JTM's failure to exercise reasonable care in qualifying Largent was a substantial factor without

which the November 1996 accident would not have occurred and whether a motor carrier of reasonable intelligence should have anticipated the danger created by the failure to exercise reasonable care.

Because the summary judgment evidence raises material fact issues concerning whether JTM exercised reasonable care in qualifying Largent as a driver and whether JTM's acts or omissions were a proximate cause of the accident, the trial court erred by granting JTM summary judgment on Morris's negligent hiring, retention, and supervision claims. We sustain Morris's second point as to these claims.

## B. Negligent Entrustment

■ Morris also contends that he raised a fact issue concerning whether JTM negligently entrusted the leased equipment to Largent. The elements of negligent entrustment are: (1) entrustment of a vehicle by the owner (2) to an unlicensed, incompetent, or reckless driver, (3) whom the owner knew or should have known was unlicensed, incompetent, or reckless, and (4) the driver's negligence on the occasion in question (5) proximately caused the accident. *Russell v. Ramirez*, 949 S.W.2d 480, 489 (Tex.App.-Houston [14th Dist.] 1997, no pet.).

Morris concedes in its brief that Hammer Trucking owned the leased equipment, but asserts that the equipment "belonged to JTM" by virtue of the exclusive lease. JTM and Hammer Trucking specifically agreed in the equipment lease agreement that Hammer Trucking would operate the leased equipment exclusively for JTM during the lease term. In addition, as we have previously noted, both JTM and Hammer Trucking contractually retained the right to control the operation and supervision of the leased equipment. *See* op. at 43–45.

■ With respect to the "ownership" requirement, several courts have concluded that a nonowner of a vehicle may be held liable for negligent entrustment of the vehicle if the nonowner has the right to control the vehicle. *See, e.g., Garcia v. Cross*, 27 S.W.3d 152, 155 (Tex.App.-San Antonio 2000, no pet.) (holding negligent entrustment claim could . be brought against vehicle owner's child, who entrusted vehicle to a friend); *Rodriguez v. Sciano*, 18 S.W.3d 725, 728 & n. 6 (Tex.App.-San Antonio 2000, no pet.) (holding negligent entrustment claim could be asserted against renters of vehicle who entrusted it to a third party); *see also McCarty v. Purser*, 379 ‘S.W.2d 291, 294 (Tex.1964) (stating that entrustor of vehicle only need have right of control). Accordingly, because JTM had the right to control the leased equipment, the fact that JTM was not the equipment's owner did not preclude a negligent entrustment claim against it.

JTM contends that it cannot be directly liable to Morris for negligent entrustment because it complied with industry, state, and federal standards. We have held, however, that this type of compliance is not dispositive of the liability issue. *See* op. at 50. We also hold that Morris raised a material fact issue regarding the remaining elements of negligent entrustment with the same evidence that raised a material fact issue concerning his claims for negligent hiring, retention, and supervision. Thus, the trial court erred by granting JTM summary judgment on Morris's negligent entrustment claim.

## C. Negligent Failure to Control

■ Morris did not raise negligent failure to control in the trial court, so we will not address that claim on appeal. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997) (holding that complaint on ap-

peal must be the same as that presented in the trial court). Morris *did* contend below that JTM negligently failed to restrict Largent's access to the leased equipment and negligently permitted Largent to maintain possession of the equipment. Morris does not challenge the trial court's rulings as to these claims on appeal, however. In addition, these claims are encompassed in Morris's negligent entrustment claim. *See Avalos v. Brown Auto. Ctr., Inc.,* 63 S.W.3d 42, 48 (Tex.App.-San Antonio 2001, no pet.) (holding that negligent entrustment law adequately protects public from injury caused by negligently entrusted driver, so negligent entrustor owes no additional legal duties to third parties); *Bartley v. Budget Rent-A-Car Corp.,* 919 S.W.2d 747, 750–51 (Tex.App.-Amarillo 1996, writ denied) (holding that plaintiff's claims for negligent failure to develop car rental forms that would inquire into renter's health problems and proposed trip length were encompassed in negligent entrustment claim). *But see Drooker v. Saeilo Motors,* 756 S.W.2d 394, 400 (Tex. App.-Houston [1st Dist.] 1988, writ denied) (holding, without analysis concerning legal duty, that summary judgment evidence raised fact issues on plaintiff's claims for negligent failure to restrict access and negligent failure to create or enforce safety rules).

We sustain Morris's second point as it pertains to his negligent hiring, retention, supervision, and entrustment claims.[21] We overrule the portion of Morris's second point concerning negligent failure to control.

### D. New and Independent Cause

In his eighth point, Morris contends that the trial court did not specifically grant JTM summary judgment on its affirmative defense of new and independent cause. Alternatively, Morris contends in his ninth point that the summary judgment for JTM on new and independent cause was improper.

New and independent cause, which is sometimes referred to as superseding cause, is not an affirmative defense; it is one element to be considered by the fact finder in determining the existence or nonexistence of proximate cause. *Dallas Ry. & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379, 383 (1952); *Benitz v. Gould Group,* 27 S.W.3d 109, 116 (Tex.App.-San Antonio 2000, no pet.). As such, it is an inferential rebuttal matter—a defensive theory that operates to rebut an essential element of the plaintiff's case by proving certain other facts. *See Buls v. Fuselier,* 55 S.W.3d 204, 211 (Tex.App.-Texarkana 2001, no pet.); 1 TEXAS TORTS AND REMEDIES § 2.12[1] (J. Hadley Edgar, Jr. & James B. Sales, eds., 2002). The burden of establishing new and independent cause in a summary judgment proceeding is on the party asserting it. *See Benitz,* 27 S.W.3d at 116–17.

JTM moved for a traditional summary judgment on Morris's direct liability claims based on this theory. The term "new and independent cause" means the act or omission of a separate and independent agency that destroys the causal connection between the defendant's negligent act or omission and the injury complained

21. Morris also moved for a partial summary judgment that JTM is "independently liable" for Largent's and Hammer Trucking's actions as a matter of law. In his reply brief, Morris asks this court to render judgment for him on this theory. This request is not set out in a separate issue or briefed on appeal. More-over, the summary judgment evidence raises a material fact issue concerning whether JTM is liable for negligent hiring, retention, supervision, and entrustment, but does not conclusively establish such liability. Accordingly, we will overrule the request.

of and thereby becomes, in itself, the immediate cause of the injury. *Phoenix Refining Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *Cook v. Caterpillar, Inc.,* 849 S.W.2d 434, 440 (Tex.App.-Amarillo 1993, writ denied). Thus, new and independent cause was an independent ground on which summary judgment could have been granted for JTM.

■ The trial court granted JTM summary judgment on Morris's direct liability claims, but did not specify the ground on which the summary judgment was granted. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Star–Telegram, Inc.,* 915 S.W.2d at 473; *Harwell,* 896 S.W.2d at 173. When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *Scott v. Galusha,* 890 S.W.2d 945, 948 (Tex.App.-Fort Worth 1994, writ denied). Because the trial court's summary judgment order on Morris's direct liability claims did not specify the ground relied on for its ruling, it encompassed JTM's new and independent cause theory, and we must affirm the summary judgment if that theory is meritorious. We overrule Morris's eighth point.

■ A defendant is entitled to summary judgment on a defensive issue if the defendant conclusively proves all the elements of the defense. *KPMG Peat Marwick,* 988 S.W.2d at 748. To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the defensive issue as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

Consequently, to be entitled to summary judgment on new and independent cause, JTM had to conclusively establish that Largent's driving of the tractor-trailer on the date of the accident while intoxicated was an intervening event that destroyed the causal connection between JTM's negligence and the accident and became the immediate cause of the injury.

■ If an intervening event is reasonably foreseeable, it cannot be considered a new and independent cause that breaks the chain of causation. *Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex.1999); *J. Wigglesworth Co. v. Peeples,* 985 S.W.2d 659, 665 (Tex.App.-Fort Worth 1999, pet. denied). The Texas Supreme Court has adopted the following factors for use in determining whether an intervening force rises to the level of a superseding cause:

(a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to a third person's act that is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of the third person's wrongful act that sets the intervening force in motion.

*Phan Son Van,* 990 S.W.2d at 754 (citing RESTATEMENT (SECOND) OF TORTS § 442 (1965)).

In its motion for summary judgment, JTM asserted that Largent's operation of the tractor-trailer at the time of the collision was not reasonably foreseeable because the tractor-trailer had not been dispatched to transport materials for JTM for nearly two weeks, and Largent was not authorized by his employer to drive the equipment. There is evidence that the tractor-trailer had not been dispatched to haul materials for JTM since October 25, and the accident occurred on November 9. In addition, Hammer testified at his deposition that Largent "took the truck unlawfully at that time." However, Hammer also testified that Largent was allowed to take the truck home with him. Hammer testified that JTM did not require him to have any policy regarding the keys to the truck, even after the accident occurred, and that it was common occurrence in the industry for a truck driver to take the truck home in order to avoid extra driving. Largent testified by affidavit that, on the day of the accident, Hammer had instructed him to take the truck to Hammer Trucking's yard for maintenance and that he was attempting to deliver the truck to Hammer when the accident occurred.

 Considering this evidence and Largent's driving safety and criminal record in light of the section 422 factors, and viewing it most favorably to Morris, the nonmovant, we hold that JTM failed to conclusively establish that Largent's driving of the tractor-trailer on the date of the accident while intoxicated was not reasonably foreseeable. The harm caused by Largent's driving while intoxicated on the date of the accident is the kind that could result from the negligent hiring of someone with DWI and drug possession convictions and the negligent entrustment of motor carrier equipment to him. In addition, Largent's driving while intoxicated on a Saturday night does not, under the circumstances presented here, appear to have been extraordinary, nor was it independent of the situation created by JTM's alleged negligent hiring and entrustment. We hold that the trial court erred in granting JTM summary judgment on its new and independent cause theory. We sustain Morris's ninth point.

### E. Civil Conspiracy

In his second and fourth points, Morris contends the trial court improperly granted JTM summary judgment on his civil conspiracy claim because JTM's attempts to classify Largent and Hammer Trucking as independent contractors were unlawful and raised a material fact issue regarding civil conspiracy. Morris also contends in his reply brief that the trial court erred in denying his motion for a partial summary judgment that the equipment lease agreement was illegal because it attempted to create independent contractor status for Hammer Trucking and its employees.

 An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Operation Rescue–National v. Planned Parenthood,* 975 S.W.2d 546, 553 (Tex.1998). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.* JTM moved for a no-evidence summary judgment on Morris's civil conspiracy claim on several grounds, including that there was no evidence that JTM, Hammer,

and/or Largent engaged in one or more unlawful, overt acts.

Morris did not file a response to this motion for summary judgment, but contends that the evidence attached to his response to JTM's other two summary judgment motions is some evidence that JTM and Hammer Trucking engaged in an unlawful act. Specifically, Morris contends that JTM and Hammer Trucking's designation in the equipment lease agreement of Hammer Trucking and its employees as independent contractors was an unlawful attempt to circumvent state and federal motor carrier safety regulations. The equipment lease agreement contains several provisions concerning Hammer Trucking's independent contractor status, but it does not refer to Hammer Trucking's employees as independent contractors. It simply refers to Hammer Trucking's employees as "employees or agents." Consequently, the lease contains no evidence that Largent was an independent contractor.

Moreover, we hold that the designation of Hammer Trucking as an independent contractor was not unlawful. The FMCSR allow for an independent contractor relationship between the interstate motor carrier and the leased equipment owner. This relationship simply does not affect the interstate motor carrier's liability to third parties for the equipment driver's negligence. *See* 49 C.F.R. § 376.12(c)(4) ("Nothing in the provisions required by [the paragraph governing control provisions] is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49

U.S.C. § 14102 and attendant administrative requirements.").[22]

The cases on which Morris relies are not on point. In *Berry,* the motor carrier and the equipment owner conspired to circumvent the statutory requirement that a motor carrier must have a permit to transport the particular type of goods it is hauling. Both parties knew their contract was illegal, but deliberately entered into it to get around the law. 327 S.W.2d at 438. Likewise, the defendants in *Carroll v. Timmers Chevrolet* conspired to evade the city ordinances governing the issuance of auto wrecker permits. 592 S.W.2d 922, 926–27 (Tex.1979). *Emerson v. Park* is not a civil conspiracy case; it merely holds that a person who obtains a permit to operate as a motor carrier may not delegate the rights and liabilities conferred by the permit to a third party. 84 S.W.2d 1100, 1102–03 (Tex.Civ.App.-Galveston 1935, writ dism'd).

■ Because JTM and Hammer Trucking's designation of Hammer Trucking as an independent contractor in the equipment lease agreement was not unlawful, the trial court did not err by granting JTM a no-evidence summary judgment on Morris's civil conspiracy claim or by denying Morris's motion for a partial summary judgment on illegal contract. We overrule point four and the portion of point two that pertains to civil conspiracy.

### VII. Joint Enterprise and Joint Venture

In his seventh point, Morris contends the trial court erred in granting JTM summary judgment on his joint enterprise and joint venture claims because he raised a

---

22. We have held that Hammer Trucking's independent contractor designation did not relieve JTM from liability under the FMCSR for the negligence of Hammer Trucking's drivers. *See* op. at 39–40.

material fact issue with respect to each of these claims.

A joint enterprise exists if the persons involved have (1) an agreement, either express or implied, with respect to the enterprise or endeavor, (2) a common purpose, (3) a common business or pecuniary interest, and (4) an equal right to direct and control the enterprise. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995); *Blackburn v. Columbia Med. Ctr.*, 58 S.W.3d 263, 271 (Tex.App.-Fort Worth 2001, pet. granted). A joint venture exists when there is (1) a community of interest in the venture, (2) an agreement to share profits, (3) an express agreement to share losses, and (4) a mutual right of control or management of the venture. *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex.1981); *Blackburn*, 58 S.W.3d at 273. JTM moved for a no-evidence summary judgment on Morris's joint enterprise and joint venture claims, contending that Morris could not produce evidence of one or more of the elements of these claims. JTM also moved for a traditional summary judgment, asserting that JTM, Hammer Trucking, and/or Largent did not have an equal right to direct and control any enterprise, nor did they have a mutual right of control or management of any venture.

Morris asserts that JTM and Hammer Trucking engaged in a joint enterprise or joint venture that was embodied in the equipment lease agreement. The evidence conclusively establishes, however, that JTM had a right superior to Hammer Trucking's to direct, control, and manage the work to be performed for JTM and over the leased equipment and the drivers, *at least while materials were being transported for JTM*. Because Hammer Trucking and JTM did not share an equal or mutual right to direct, control, or manage the enterprise or venture that was embodied in the lease agreement, transporting materials for JTM, the trial court properly granted JTM summary judgment on Morris's joint enterprise and joint venture claims.

This holding is not inconsistent with our conclusion that JTM and Hammer Trucking both contractually retained some right to control the leased equipment. The mere fact that both parties had some right to control the leased equipment does not mean that they shared an equal right to control it, or to direct, control, or manage the enterprise for which they contracted: to transport goods for JTM. We overrule Morris's seventh point.

## VIII. Conclusion

Having disposed of all of Morris's points, we reverse the part of the trial court's judgment that grants JTM and DCV summary judgment on Morris's vicarious liability, negligent hiring, retention, and supervision, and negligent entrustment claims and remand those claims to the trial court. We affirm the portion of the trial court's judgment that grants JTM and DCV summary judgment on Morris's respondeat superior, civil conspiracy, joint venture, and joint enterprise claims and that denies Morris's motion for partial summary judgment.