COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-352-CV

 

 

LINDA C. BELL                                                                    APPELLANT

 

                                                   V.

 

VPSI, INC. AND FORT WORTH                                               APPELLEES

TRANSPORTATION
AUTHORITY

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.                  
Introduction








Appellant Linda C. Bell sued
Appellees VPSI, Inc. and the Fort Worth Transportation Authority (ATransportation Authority@), asserting vicarious liability for alleged injuries she suffered in
a vehicular accident while a passenger in a van driven by her husband, Homer
Bell.  She appeals from a summary
judgment in favor of VPSI and the Transportation Authority and from the denial
of her own motion for partial summary judgment, all on the issue of vicarious
liability.  We affirm the judgment of the
trial court.

II.               
Background

A.        The Vanpool Program

The Transportation Authority, also known as the AT,@
is a regional political subdivision of the State that provides public
transportation services in and around Tarrant County.  VPSI is a wholly-owned subsidiary of The
Budget Group, Inc., a general-use car rental business.  VPSI is a for-profit corporation, the
business of which is providing and operating commuter vanpool programs.  In conjunction with local transportation
authorities, VPSI operates vanpool transportation programs in over forty urban
areas across the United States.  

The Transportation Authority=s Rideshare Department began a vanpool
program in Tarrant County in 1974 with six city-owned vans.  In 1984, the Transportation Authority decided
to use VPSI as a provider of vehicles and maintenance for its vanpool
program.  In cooperation with VPSI, the
vanpool program grew to 125 vans by 1995. 
The program served a number of corporate employers in Tarrant County,
including Lockheed, Bell Helicopter, and Burlington Northern.  








In 1998, anticipating continued increase in
vanpools with federal funding, the Transportation Authority contracted directly
with VPSI to lease a fleet of 9-, 12-, and 15-passenger Dodge vans from VPSI
for the vanpool program, and to provide management, maintenance, and insurance.  The stated purposes of the vanpool program
were to reduce the number of single occupancy vehicles on the road by
encouraging vanpools as a viable alternative, thus reducing air pollution to
meet federal environmental directives, to provide cost-effective transportation
services to commuters not in a traditional bus service area, to offer a
selection of vehicle sizes in order to allow smaller groups of commuters to
take advantage of vanpooling as an option to driving alone; and to assist in
general in providing regional transportation to commuters originating or
terminating in Tarrant County.  

B.        Vanpool Drivers








Under the vanpool program, drivers, passengers,
and their employers are solicited by the Transportation Authority and VPSI to
participate in the vanpool program for commutes between their places of
employment and homes.  Passenger groups
are formed by the Transportation Authority based upon origin and destination
points; passengers pay a monthly charge to the Transportation Authority for
commutes to and from work.  Volunteer
drivers who want to be a part of a vanpool agree to transport passengers to and
from their employment in vans provided by VPSI. 
Each driver is assigned a van and agrees to drive and maintain the van,
including scheduled and unscheduled maintenance at VPSI=s
cost, recruit additional passengers to keep the vanpool at optimal occupancy,
and collect the vanpool passenger charges. 
Drivers receive coupon books to present to approved maintenance
dealerships, service vendors, and repair facilities, with charges billed
directly to VPSI.  In exchange, the
drivers receive daily commutes to and from their employment without charge and
are also allowed personal use of the assigned vans on evenings and weekends for
up to 250 miles per month.  The
Transportation Authority bills the driver for fuel consumed during the 250
personal-usage miles.  

The relationship between VPSI, the Transportation
Authority, and the driver is governed by a contract called the AThree-Party Volunteer Driver Agreement.@ 
The three-party agreement specifies that an Authorized Driver must have
a valid driver=s
license; have at least five years=
licensed driving experience; be at least twenty-five years of age; and be
approved, in writing, by VPSI to operate vehicles provided by VPSI.  The agreement further provides that the
Authorized Driver Ais not an
agent, servant or employee of VPSI.  The
Authorized Driver is an independent party participating, with others, in a
voluntary, not for profit, ridesharing agreement.@    

C.        The Accident 








Linda Bell=s
husband, Homer Bell, was regularly employed by Lockheed in Fort Worth.  In March 1999, Homer entered into a
three-party volunteer driver agreement with the Transportation Authority and
VPSI to be an Authorized Driver under the vanpool program for daily commutes of
employees to Lockheed.    

On a rainy Saturday in December 1999, Homer drove
the van he had been assigned, with Linda as a passenger, some twenty-eight
miles from their home in Forestburg to Decatur. 
From Forestburg, they traveled down the Alvord highway, turned onto
Highway 287, and continued on that highway into Decatur.  After stopping for about thirty minutes to
service and change the van=s
oil at the Kwik Lube in Decatur, Homer and Linda shopped at the local Wal-Mart
for about an hour, lunched at Taco Bell for approximately another half hour,
and then returned to the Wal-Mart parking lot where they waited nearly another
hour for their daughter to deliver their two grandchildren to them for an
overnight stay.   








After picking up their grandchildren, Homer and
Linda left Decatur and proceeded thirteen to fifteen miles up a different road
to see a display of a lighted Santa Claus figure loading his reindeer into an
eighteen-wheeler.  From the Wal-Mart,
they drove up FM 51 to Highway 455, where they made a short detour at Slidell
to see the display.  After stopping to
see Santa, they started driving back to Forestburg.  They were on Farm Road 455 headed toward the
Alvord highway, which would have taken them back to Forestburg, when the van
hydroplaned on the wet roadway and crashed into a tree.  Linda alleged that she sustained injuries in
the accident.

D.        The Suit

Linda sued Homer, VPSI, and the Transportation
Authority, alleging that Homer=s
negligence, in exceeding a safe speed under the wet road conditions,
proximately caused her injuries, and that VPSI and the Transportation Authority
were vicariously liable for Homer=s
negligence under the doctrines of respondeat superior, retained contractual
control, and joint enterprise.  VPSI and
the Transportation Authority filed traditional motions for summary judgment on
Linda=s
vicarious liability allegations, arguing that Homer was an independent
contractor and that no agency, employment, or joint enterprise relationship
existed between them and Homer; that VPSI and the Transportation Authority had
no right or authority to control Homer at the time of the accident; and that
the acts of Homer for which Plaintiff sought to impose liability were outside
the course and scope of any authority or employment at the time of the
accident.  The Transportation Authority
also moved for summary judgment on the ground that, as a governmental unit, it
retained sovereign immunity as to liability for any negligence of Homer as a
volunteer vanpool driver and independent contractor, and that Linda failed to
comply with the notice requirement of the Texas Tort Claims Act.    








Linda filed a response and a cross-motion for
partial summary judgment on the same issues and amended her petition to include
direct allegations of negligence against VPSI and the Transportation Authority,
alleging failure to train Homer in safe driving practices.  The trial court granted VPSI=s and the Transportation Authority=s motions for summary judgment and
denied Linda=s.  The trial court later granted another summary
judgment in favor of VPSI on Linda=s
direct negligence claim.  Linda nonsuited
her claims against Homer and her remaining claims against the Transportation
Authority.  Linda appeals only from the
summary judgments on her vicarious liability claims and the denial of her own
partial summary judgment motion.  She
does not contest the direct negligence summary judgment.

III.            
Standard of
Review

In a summary judgment case, the issue on appeal is
whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary judgment, we take as true
all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered
unless it is uncontroverted.  Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965).

The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s
cause of action or defense as a matter of law. 
Clear Creek Basin, 589 S.W.2d at 678.  When, as here, the trial court does not
specify the grounds upon which a summary judgment was granted, we affirm the
summary judgment if any of the ories presented to the trial court and preserved
for appellate review are meritorious.  Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996); Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).    

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties=
summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.








IV.            
Vicarious
liability

In her first three issues, Linda argues that VPSI
and the Transportation Authority had a right of control over the details of
Homer=s
activity that caused the accident, thus exposing them to vicarious liability;
that Homer was in the course and scope of his employment at the time of the
accident; and that Homer=s
mingling of personal business with vanpool business did not take him outside
the course and scope of his employment or contractual duties.             We read Linda=s
fourth amended petition as specifically pleading theories of respondeat
superior based on a master-servant relationship, retention of contractual
supervisory control, and joint enterprise as the alternative bases of her
vicarious liability claims against VPSI and the Transportation Authority for
Homer=s alleged
negligence, and we will frame our analysis in the context of those three
theories.

A.        Respondeat Superior













Under the doctrine of respondeat superior, an employer is
vicariously liable for the negligence of an employee acting within the scope of
his employment, although the employer has not personally committed a wrong.  St. Joseph Hosp. v. Wolff, 94 S.W.3d 513,
541-42 (Tex. 2002).  AThe most frequently proffered justification for imposing such
liability is that the principal or employer has the right
to control the means and methods of the agent or employee=s work.@  Id. at 542 (quoting Baptist Mem=l Hosp. Sys. v. Sampson, 969 S.W.2d
945, 947 (Tex.1998)). This right to control
distinguishes independent contractors, who have sole control over the means and
methods of the work to be accomplished, from employees. Sampson, 969
S.W.2d at 947.  The right
of control is the Asupreme test@ for whether
a master-servant relationship, rather than an independent contractor
relationship, exists.  Wolff, 94
S.W.3d at 542 (citing Golden Spread Council, Inc. No. 562 of Boy Scouts of
Am. v. Akins, 926 S.W.2d 287, 290 (Tex.1996)).        In
her fourth amended petition and response to the motions for summary judgment of
VPSI and the Transportation Authority, Linda alleged that Homer was the
employee or co-employee of those Defendants, rather than an independent
contractor, because the detailed provisions of the contract subjected him to
their right to control the details of his work as a driver in the vanpool
program and that he was acting within the course and scope of his employment at
the time of the accident.  In their
motions for summary judgment, VPSI and the Transportation Authority contended
that, as a matter of law, Homer was not their employee or agent and that he was
not acting within the course and scope of any employment or agency relationship.  We will uphold the trial court=s summary judgment on the theory of respondeat superior if VPSI and
the Transportation Authority conclusively negated at least one element of Linda=s respondeat superior claim.  See
Tex. R. Civ. P. 166a(c).  

1.                 
Right of
control








VPSI and the Transportation Authority contended in
their motions for summary judgment that the express terms of the three-party
agreement, providing that the drivers are not their employees, servants, or
agents but are independent parties operating as volunteers, conclusively
establishes Homer=s status
as a volunteer or independent contractor. 
A contract between the parties that establishes an independent
contractor relationship is determinative of the parties=
relationship in absence of extrinsic evidence indicating that the contract was
a Asham or cloak@
designed to conceal the true legal relationship of the parties or that despite
the contract terms, the true agreement vested the right of control in the
principal.  Exxon Corp. v. Perez,
842 S.W.2d 629, 630 (Tex. 1992) (citing Newspapers, Inc. v. Love, 380
S.W.2d 582, 590 (Tex. 1964)); see also Ross v. Tex. One P=ship, 796 S.W.2d 206, 210 (Tex.
App.CDallas
1990), writ denied, 806 S.W.2d 222 (Tex. 1991).[1]   








Linda does not rely on extrinsic evidence to show
that the contract was a sham or subterfuge; nor does she point to any summary
judgment evidence of actual exercise of control to show that the true operating
agreement vested the right of control in VPSI and the Transportation
Authority.  Rather, she relies upon other
terms of the contract specifying the duties of the parties as evidence that
VPSI and the Transportation Authority retained the right of control over the details
of Homer=s work as
a driver, such that the true agreement created a master-servant
relationship.  She points to the list of
duties that an authorized driver assumed under the contract, including the
responsibility to keep the exterior and interior of the van clean; to purchase
gas at major name-brand service stations; comply with recommended or required
maintenance service at approved service stations; obtain VPSI=s advance authorization prior to any
other maintenance or repair over a certain dollar amount; not drive outside a
200-mile radius of the driver=s
home; and operate the vehicle in accordance with Aall
applicable laws, ordinances, rules and regulations.@  She also emphasizes that he was required to
drive the van according to a preset schedule and to participate in a basic
driver safety training program, and that his decision-making was limited to
choosing where to pick up passengers and whether eating or smoking would be
allowed.  Linda argues
that the agreement=s provision
giving VPSI the right to terminate the agreement on thirty days= notice without cause or on twenty-four hours= notice with cause demonstrates that VPSI retained a right to control
the details of Homer=s compliance
with the contract because it could terminate him at any time. 








The right to terminate an
agreement as to a worker is not evidence that details of the work are subject
to the principal=s
control.  See Mary Kay Inc. v. Woolf,
146 S.W.3d 813, 819 (Tex. App.CDallas 2004, pet. denied) (citing Cont=l Ins. v. Wolford, 526 S.W.2d 539, 541-42
(Tex. 1975) (holding right to discharge worker not evidence worker was
employee; worker was independent contractor as matter of law)).  Similarly, requirements that a worker comply
with applicable laws, regulations and safety requirements that relate to
performance of the contract likewise do not constitute evidence that the
employer controls the details of how the worker performs his job.  See, e.g., Hoechst Celanese Corp. v.
Compton, 899 S.W.2d 215, 221 (Tex. App.CHouston [14th Dist.] 1994, writ denied); Granger v. Tealstone
Contractors, L.P., No. 05-04-00636-CV, 2005 WL 565098, at *1 (Tex. App.CDallas 2005, pet. denied) (mem. op.). 
Linda does not explain how the other provisions of the contract
requiring Homer to assume responsibility for keeping the van clean or for
maintenance, service, and repairs constitute anything more than would be
required for an ordinary lease or bailment or are inconsistent with the express
provision that he is not an agent, servant, employee or co-employee of VPSI and
the Transportation Authority.

Considering the summary
judgment evidence before us, we hold that VPSI and the Transportation Authority
conclusively established by the express terms of the contract that Homer was an
independent contractor.  Conversely,
Linda failed to conclusively establish that he was not.

2.                 
Course and
scope








VPSI and the Transportation Authority further
contend that, even if Homer was an employee, the summary judgment evidence
conclusively established that, at the time of the accident, he was not in the
course and scope of any employment.  We
agree.  In order to render the master
liable for an act of his employee, the act must be committed within the scope
of the general authority of the employee, in furtherance of the master=s business, and for the accomplishment
of the object for which the servant was hired. 
Leadon v. Kimbrough Bros. Lumber Co., 484 S.W.2d 567, 569 (Tex.
1972); Robertson Tank Lines, Inc. v. Van Cleave, 468 S.W.2d 354, 357
(Tex. 1971).  An
employer is liable for the negligent acts of his employee only if, on the
occasion in question, the employer had the right and power to direct and
control the employee in the performance of the causal act or omission at the
time of its occurrence.  Arbelaez v.
Just Brakes Corp.,149 S.W.3d 717, 720 (Tex. App.CAustin 2004, no pet.) (citing Wolff, 94 S.W.3d at 542); J
& C Drilling Co. v. Salaiz, 866 S.W.2d 632, 636 (Tex. App.CSan Antonio 1993, no writ). 








Linda contends that the
summary judgment evidence establishes that Homer=s activity at the time was within the course and scope of the vanpool
agreement because (1) the trip was necessitated by contractually-required  maintenance, (2) personal use of the VPSI van
was authorized by the agreement, and (3) the mingling of vanpool and personal
business put Homer within the scope VPSI=s and the Transportation Authority=s business.  VPSI and the
Transportation Authority argue that, as a matter of law, Homer was not within
the course and scope of the vanpool agreement at the time of the accident
because the accident occurred several hours after the oil change, on an
entirely different route from the one he traveled to get to Decatur, and while
he was on purely personal business. 








It was undisputed that the
accident happened on a Saturday, outside Homer=s Monday through Friday commuting period.  The summary judgment evidence included
excerpts from Homer=s deposition
to the effect that he needed to get the van serviced that day and was on Avanpool business that day.@  The Kwik Lube was where he normally
got the oil changed.  However, he further
testified that picking up the grandchildren in Decatur and taking them back to
Forestburg to spend the night was Aprearranged@; that the
route he took to allow the children to see the Santa Claus display was not on
his route home; and that he was on Apersonal business@ at the time of the accident, not on any business for VPSI or the
Transportation Authority.  VPSI=s summary judgment evidence included deposition testimony of Michele
Saye, VPSI=s regional
manager, that VPSI had an account with the Kwik Lube in Decatur.  But, she said, it was up to the driver to
have maintenance performed at an approved facility whenever he Adeemed it necessary.@  It is undisputed that the van
was owned by VPSI and leased to the Transportation Authority.  When it is proved that the vehicle involved
in an accident was owned by the defendant and the driver was an employee
regularly employed by the defendant, a presumption arises that the driver was
acting within the course and scope of his employment when the accident
occurs.  Robertson Tank Lines, Inc.,
468 S.W.2d at 357; Morris v. JTM Materials, Inc., 78 S.W.3d 28, 47 (Tex.
App.CFort Worth 2002, no pet.); Gant v. Dumas Glass & Mirror, Inc.,
935 S.W.2d 202, 212 (Tex. App.CAmarillo 1996, no writ).  The
presumption arises from the fact of ownership by the employer and employment
ofy the driver.  Robertson Tank Lines,
Inc., 468 S.W.2d at 357.    

The presumption is rebutted
by evidence that the driver has turned aside, even briefly, for a Apersonal errand@ and has not
yet returned to his mission.  See
Morris, 78 S.W.3d at 47 (presumption rebutted where employee, whom
employer  instructed to drive
tractor-trailer from home to yard for maintenance, went to sister=s house first on personal errand and was leaving her house to continue
to maintenance yard when accident occurred); Gant, 935 S.W.2d at 212
(presumption rebutted by employee=s testimony he was returning from personal business of eating lunch en
route to work); J & C Drilling Co., 866 S.W.2d at 636 (evidence
employee had left site to go get something to eat in another town and accident
occurred as he was returning to site rebutted presumption); see also Andrews
v. Houston Lighting & Power, 820 S.W.2d 411, 413 (Tex. App.CHouston [14th Dist.] 1991, writ denied) (A[A]n employer is not liable for actions that an employee takes in his
own interest and not to further the purpose of carrying out the master=s business.@).        








Once the presumption is
rebutted, ownership of the vehicle by the employer and employment of the driver
are insufficient to raise the issue of course and scope of employment.  Robertson Tank Lines, Inc., 468 S.W.2d
at 358.  The presumption is merely a rule
of procedure and Avanishes@ when evidence to the contrary is presented.  Id.; see also Green v. Ransor, Inc., 175
S.W.3d 513, 516 (Tex. App.CFort Worth 2005, no pet.) (discussing effect of presumption).  The burden is then on the plaintiff to
produce evidence that the driver was in the course and scope of his employment.  Robertson Tank Lines, Inc., 468 S.W.2d at
358; J & C Drilling Co., 866 S.W.2d at 636.   













Here, any presumption that
Homer was within the course and scope of employment was rebutted by undisputed
evidence that he was on personal business for the three hours prior to the
accident.  However, Linda argues that the
summary judgment evidence established or at least raised fact issues of mixed
or dual purposes for Homer=s trip because he had the van serviced at Decatur during his trip in
accordance with his contractual duty to maintain the vehicle.  Linda 
urges that this business purpose for the trip brought him within the
course and scope of his employment at the time of the accident under the
principle that if the purpose of serving the master=s business actuates the servant to Aany appreciable extent,@ his acts are within the scope of his employment.  See Howard v. Am. Paper Stock Co., 523
S.W.2d 744, 747 (Tex. Civ. App.CFort Worth 1975), reformed and aff=d, 528 S.W.2d 576 (Tex. 1975)
(holding truck driver who was pursuing motorist for personal reason but did not
deviate from route to return to employer=s business was serving employer=s business to Aappreciable
extent@ and thus within course and scope); Dictaphone Corp. v. Torrealba,
520 S.W.2d 869, 872 (Tex. Civ. App.CHouston [14th Dist.] 1975, writ ref=d n.r.e.) (holding employee within course and scope at time of
accident despite stopping to cash check for business trip before leaving town
and leaving early for trip partly for convenience); see also Arbelaez,
149 S.W.3d at 722 (holding fact issue on course and scope raised by evidence
employee was complying with employer=s request to make Abreakfast run@ that
benefitted both employee and employer); Mayes v. Goodyear Tire & Rubber
Co., 144 S.W.3d 50, 53, 56 (Tex. App.CHouston [1st Dist.] 2004, pet. filed) (reversing summary judgment for
Goodyear where, although evidence showed employee driving Goodyear truck spent
night at father=s house in
Houston and was on his way to buy cigarettes and go home and change clothes
before commuting to work in Bryan, there was also evidence that he was carrying
load of Goodyear tires for delivery that morning).[2]

The cases Linda relies on
involved simultaneously mingled or mixed purposes that are being pursued at the
very time of the accident and are, thus, distinguishable from this case, in
which Homer had long since completed his business task of servicing the
van over three hours before the accident. 
In those intervening hours, he and Linda had pursued purely personal
errands including shopping, eating lunch, 
waiting for and picking up their grandchildren, and driving several
miles down a different road to a different town to watch Santa loading his
reindeer before heading home. 








 Linda contends that the Apersonal errand@ rule,
however, only excludes course and scope as to that portion of the trip that
relates to the personal errand and that, at worst, Homer had completed his
personal errands and Aresumed@ the business purpose of his trip at the time of the accident.  Her reasoning is that the trip was Acontractually compelled@ to perform maintenance on the vehicle, and thus necessarily
encompassed both a trip to Decatur and back, and that Homer was on the Avery same road@ required to
complete his trip at the time of the accident. 
We disagree for three reasons.

First, according to Homer=s own description of his route to and from Decatur, he had not yet
returned to the Avery same
road@ required to return to Forestburg from his trip but was on a different
highway coming from a different direction and from a different town.  Homer was still on the road from Stillwell
and had not reached the turnoff to the Alvord highway when the accident
occurred.   

Second, the summary judgment
evidence established that the Aprearranged@ purpose of
Homer=s trip was to pick up his grandchildren to spend the night, a purely
personal errand.  In contrast, there is
no summary judgment evidence that stopping at the Kwik Lube to get the vehicle
serviced was a dual purpose for the trip rather than simply an afterthought.

Third, and most importantly,
Linda acknowledges Homer had actually completed both the business and
personal purposes of his trip and was on his way home when the accident
occurred.  At best, Homer=s activity at the time of the accident was analogous to returning home
from work, which puts him within the Ato and from work@ rule.  See Morris, 78 S.W.3d at 48 (noting
truck driver=s attempt to
return equipment to yard analogous to driving to work).  








Even when driving a vehicle
furnished by the employer, the employee is generally not in the course and
scope while going to and returning from work unless he is directed by his
employer or furthering the employer=s business.  See Upton v.
Gensco, Inc., 962 S.W.2d 620, 622 (Tex. App.CFort Worth 1997, pet. denied); Garcia v. City of Houston, 799
S.W.2d 496, 499 (Tex. App.CEl Paso 1990, writ denied) (holding presumption that employee driving
city-owned vehicle was in course and scope vanished when evidence established
he was finished with tasks for day and on his way home); Drooker v. Saeilo
Motors, 756 S.W.2d 394, 400 (Tex. App.CHouston [1st Dist.] 1988, writ denied) (affirming summary judgment
where employee was driving company vehicle home for dinner); Longoria v.
Texaco, Inc., 649 S.W.2d 332, 335 (Tex. App.CCorpus Christi 1983, no writ) (affirming summary judgment for employer
where employee using company vehicle had finished work for day and was on way
home, although use of vehicle was considered fringe benefit and part of
compensation); Salmon v. Hinojosa, 538 S.W.2d 22, 24 (Tex. Civ. App.CSan Antonio 1976, no writ)(holding presumption of course and scope
rebutted as matter of law by evidence that employee was merely returning from
home to work).  








There is no summary judgment
evidence that the trip to Decatur was compelled that day for any scheduled
maintenance nor by any direction of VPSI. To the contrary, the only summary
judgment evidence reflected that Homer could have maintenance performed at his
convenience at a number of locations. We hold that, as a matter of law, Homer
was not in the course and scope of employment when he hydroplaned off the road
and into a tree several miles off of his original route to Decatur while
returning home from pursuing purely personal interests over three hours after having
the van serviced.        

3.                                                                 
Contractual
Control

Linda=s
principal contention in this appeal, to which virtually all of her argument is
directed, is that regardless of how the relationship between Homer, VPSI, and
the Transporation Authority is characterized, whether as employment, agency, or
joint enterprise, VPSI and the Transportation Authority retained contractual
control over his operation of the van by virtue of the three-party agreement,
subjecting them to vicarious liability for his negligence.  In her fourth amended petition and response
to VPSI=s and the
Transportation Authority=s
motions for summary judgment, Linda pleaded that those Defendants retained such
a degree of control over Homer=s
operation and maintenance of the van as to create a duty based on Section 414
of the Restatement (Second) of Torts.   








We first note that the long-standing common-law
rule in Texas, as stated in Section 409 of the Restatement (Second) of Torts,
is that Athe
employer of an independent contractor is not liable for physical harm caused to
another by an act or omission of the [independent] contractor or his servants.@ 
Restatement (Second) of Torts '409 (1965); see, e.g.,
Elliott-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999); Redinger v.
Living, Inc., 689 S.W.2d 415, 418 (Tex. 1985); Abalos v. Oil Dev. Co. of
Tex., 544 S.W.2d 627, 631 (Tex. 1976).  However, in Redinger, the supreme
court adopted the rule stated in the Restatement (Second) of Torts, Section 414
that if the employer retains a right of control over the manner in which the
independent contractor performs its work, a duty may arise on the part of the
employer to exercise that control in a reasonable manner.  Redinger, 689 S.W.2d at 418 (holding
general contractor liable for negligence in supervising subcontractor=s employee where general contractor
retained right to direct order in which work was done and to forbid the work
being done in a dangerous manner, adopting Restatement
(Second) of Torts '414
(1965)).  This rule applies where the
employer retains some control over the manner in which the work is performed,
but not the degree of control that would subject him to liability as a
master.  Redinger, 689 S.W.2d at
418; Restatement (Second) of Torts ' 414, cmt. a (1965)).








VPSI and the Transportation
Authority argue that because Linda has not appealed the summary judgments as to
her direct negligence claim, she is precluded from raising this theory on
appeal because liability under this theory is based upon direct negligence of
the employer.  The Restatement does treat
this type of liability as direct negligence, rather than vicarious
liability.  Restatement (Second) of Torts ' 414, cmt. a (ASuch a
supervisory control may not subject him to liability under the principles of
Agency, but he may be liable under the rule stated in this section.@).  








Section 414 is contained in
Chapter 15, Topic 1 of the Restatement, entitled AHarm Caused by Fault of Employers of Independent Contractors.@  Id. (emphasis added); see
also Ch. 15, Topic 1, Introductory Notes (1965) (stating in such a case A[t]he employer=s liability
must be based upon his own personal negligence in failing to exercise
reasonable care . . . such control over doing of the work as he retains to
himself.@ (emphasis added)); accord Redinger, 689 S.W.2d at 418 (discussing liability in terms of direct
negligence, holding general contractor liable who was present to observe danger
and gave order that caused plaintiff=s injury); see also Hoechst-Celanese Corp. v. Mendez, 967
S.W.2d 354, 356 (Tex. 1998) (noting duty under Section 414 is imposed on
employer who Aretain[s] a
[right of] control less than that which is necessary to subject him to
liability as a master=@).  However, other recent cases
do refer to liability under Section 414 as Avicarious.@  See, e.g., Fifth Club, Inc. v. Ramirez,
196 S.W.3d 788, 792 (Tex. 2006); Clayton W.
Williams, Jr., Inc. v. Olivo, 952 S.W.2d
523, 528 (Tex. 1997) (characterizing Redinger as
holding general contractor liable for independent contractor=s negligence).  Because it is
unclear whether liability in Texas under Section 414 of the Restatement is
characterized as vicarious or direct (or whether it may be either one), and
because Linda=s appellate
brief addresses this claim in detail, we address it.  

In order for liability to
attach, a general contractor=s retained right of control must be more than a general right to order
the work to start or stop, to inspect progress, or to receive reports.  Redinger, 689 S.W.2d at 418; Hoechst-Celanese
Corp., 967 S.W.2d at 356.  The
retained right of control must extend to the operative details of the
contractor=s work so
that he is not free to do the work in his own way.  Redinger, 689 S.W.2d at 418.  The duty is commensurate with the degree of
control retained by the general contractor. 
Elliott-Williams Co., 9 S.W.3d at 803.  Additionally, such liability exists only when
the retained control relates to the injury-producing activity itself.  Clayton W. Williams, Jr., Inc., 952
S.W.2d at 528 (holding employer=s supervisory control must relate to condition or activity that caused
injury); Hoechst-Celanese Corp., 967 S.W.2d at 357 (requiring Anexus@ between
retained supervisory control and condition or activity that caused injury).     








The employer may retain the
right of control over an independent contractor in two ways, by contract or by
actual exercise of control.  Shell Oil
Co. v. Khan, 138 S.W.3d 288, 292 (Tex. 2004); Dow Chem. Co. v. Bright, 89
S.W.3d 602, 607 (Tex. 2002); Lee Lewis Constr., Inc. v.
Harrison, 70 S.W.3d 778, 783 (Tex. 2001). 
Whether the employer retained the right of control by contractual
assumption is a question of law, whereas retention by actual exercise of
control is generally a question of fact for the jury.  Shell Oil Co., 138 S.W.3d at 292;
Dow Chem. Co., 89 S.W.3d at 607; Lee Lewis Constr., 70 S.W.3d at
783.         








Linda does not contend that
VPSI or the Transportation Authority was exercising actual control over Homer=s activities at the time of the accident.  Therefore, the issue is whether VPSI and the
Transportation Authority retained a contractual right of control over his
activities sufficient to impose a duty on those parties to others on the
highway.  Linda argues that sufficient
right of control was retained under the three-party agreement, which authorized
Homer=s personal use of the van and established detailed rules on how the
van must be operated, even when the van was being used for personal
purposes.  Specifically, Linda references
the contract=s
requirement that Homer participate in a Abasic driver training/safety awareness orientation,@ and Aoperate the
vehicle in accordance with all applicable laws, ordinances, rules and
regulations.@  She also notes that the program imposed
additional rules including Asafety tips@ for
operating the van such as: adjust seat and mirrors before driving; allow more
room from the curb in making a turn; use assigned rear passengers to assist and
guide in backing; always back slowly; use turn signals; in case of skid, do not
lock brakes; wear seat belts at all times; and avoid excessive speed.  Linda then again points out that Homer was
subject to being immediately terminated if he failed to comply because the
Transportation Authority retained absolute right to terminate on thirty days
notice or less if VPSI waived the notice requirement.  She reasons that because the contractual
right of control of VPSI and the Transportation Authority extended to his
personal use, vicarious liability of those parties based upon that retention of
contractual control should also be extended to his activities during personal
use.  We disagree.  








An employer of an independent
contractor does not incur a duty of care under Restatement Section 414 merely
by requiring the independent contractor to comply with the employer=s standard safety practices and applicable laws.  Hoechst-Celanese Corp., 967 S.W.2d at
357 (holding defendant=s insistence
that independent contractor observe and comply with federal laws, safety
guidelines and standard safety precautions did not impose unqualified duty of
care to ensure contractor=s employees
did nothing unsafe); Johnson v. Scott Fetzer Co., 124 S.W.3d 257, 266
(Tex. App.CFort Worth
2003, pet. denied) (holding contractual requirement that distributors follow
manufacturer=s sexual
harassment policies not sufficient retention of control to impose liability for
dealer=s harassment on manufacturer); Victoria Elec. Coop., Inc. v.
Williams, 100 S.W.3d 323, 329 (Tex. App.C San Antonio 2002, pet. denied) (holding utility=s contractual right to require independent contractor to comply with
applicable federal, State, and municipal safety laws and codes and utility=s safety manual not sufficient to impose duty on utility to ensure
safety of traveling public for activity of independent contractor in
transporting utility poles on highway).  

Additionally, a contracting
party=s right to terminate or Afire an independent contractor for non-compliance [with contract
provisions] does not create liability for everything the independent contractor
does (or fails to do).@  Shell Oil Co., 138 S.W.3d at 293
(holding right of oil company to force dealer to hire security guard by
threatening to terminate dealership did not create liability on company for
dealer=s failure to do so); Dow Chem. Co., 89 S.W.3d at 607-08
(holding right to require compliance with safety regulations and to order work
stopped if employer had known of violation did not impose duty on employer for
independent contractor=s
negligence).  








While a contracting party may
be liable if it had knowledge of a violation of law or a safety rule by an
independent contractor and failed to intervene to correct it, Linda has never
alleged nor does she now contend that VPSI or the Transportation Authority knew
of Homer=s alleged negligence.  See,
e.g., Shell Oil Co., 138 S.W.3d at 293 (affirming no-evidence summary
judgment for oil company absent evidence it knew dealer failed to train its
employees as required by contract); Koch Refining Co. v. Chapa, 11
S.W.3d 155, 157 (Tex. 1999) (holding general contractor not liable unless
contract gave it right to take action upon learning that subcontractor=s employees acted unsafely); Hoechst-Celanese Corp., 967 S.W.2d
at 357 (holding employer who is aware independent contractor routinely ignores
applicable federal guidelines and company policies related to safety may owe
duty to require corrective measures or cancel contract).  Otherwise, at most, a general contractor owes
a duty that any contractual safety requirements and procedures not unreasonably
increase, rather than decrease, the probability and severity of injury.  Dow Chem. Co., 89 S.W.3d at 608 (citing
Hoechst-Celanese Corp., 967 S.W.2d at 358).  








Moreover, Linda acknowledges
that Aneither VPSI nor the Transportation Authority could compel Homer Bell
. . . to follow their driving rules nor could they have forced Homer Bell to
slow down on that faithful [sic] rainy afternoon.@  To hold that the imposing of
contractual safety requirements, alone, on independent contractors somehow
subjects the employer either to a duty to prevent an independent contractor=s negligent conduct or to liability for an independent contractor=s negligence in failing to comply with safety requirements would deter
general contractors from imposing even minimum safety rules and requirements.  Dow Chem. Co., 89 S.W.3d at 608.[3]


We hold that, as a matter of
law, neither VPSI nor the Transportation Authority retained sufficient
contractual right of control to impose an independent duty on them to members
of the traveling public, including Linda, to ensure that Homer did not drive at
an excessive rate of speed on the highway. 
Nor did those parties retain sufficient right of control to subject them
to vicarious liability for Homer=s negligence.  

B.                
Joint
enterprise








The essential elements of joint enterprise are (1)
an agreement among the members of the group, (2) a common purpose, (3) a common
pecuniary interest, and (4) an equal right of control over the enterprise.  St. Joseph Hosp., 94 S.W.3d at 525
(citing Restatement (Second) of Torts ' 491 (1965)).  VPSI=s
and the Transportation Authority=s
motions for summary judgment challenged the latter two elements.

A Acommon
pecuniary interest@ is a
monetary interest among the members of the group and shared without special or
distinguishing characteristics.  Id.
at 531.  The summary judgment evidence
conclusively establishes that there was no monetary interest shared among VPSI,
the Transportation Authority, and Homer without special or distinguishing
characteristics.  Indeed, the summary
judgment evidence shows that Homer had no pecuniary interest in the vanpool
agreement whatsoever.  Linda=s attempt to cast his rights to commute
in the van and to use it for personal business are unavailing as Apecuniary@
interests; these benefits were strictly nonmonetary and, moreover, were not
shared in common with VPSI and the Transportation Authority.








Nor did Homer share with VPSI and the
Transportation Authority an equal right of control over the enterprise.  The very summary judgment evidence upon which
Linda relies to show Homer=s
lack of control in the respondeat superior context proves that his control was
not equal to that of VPSI and the Transportation Authority.  Moreover, the summary judgment evidence shows
that Homer was but a small part of a much larger enterprise involving VPSI, the
Transportation Authority, and many other vanpool driversCan
enterprise over which he had no control whatsoever.

We hold that the summary judgment evidence
conclusively negates the common-pecuniary-interest and equal-right-of-control
elements of Linda=s joint
enterprise theory.  Therefore, the trial
court did not err by granting VPSI=s
and the Transportation Authority=s
motions for summary judgment on joint enterprise or by denying Linda=s motion for partial summary judgment
on the same theory.

V.               
Conclusion

We overrule Linda=s
first three issues.  We do not reach her fourth
issue, in which she argues that she provided timely notice to the
Transportation Authority under the Tort Claims Act.  We therefore affirm the trial court=s judgment, and we affirm the trial
court=s denial
of Linda=s motion
for summary judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL A:      DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED:  October 5, 2006

 











[1]None
of the parties separately argues that the terms Aagent@ or Avolunteer@ in
the three-party agreement are determinative. 
Indeed, a party may be an agent without subjecting his principal to
vicarious liability. To impose vicarious liability on the principal, the proper
inquiry for agency is whether the agent was acting within the scope of the
agency relationship at the time of the wrongful act.  See Celtic Life Ins. Co. v. Coats, 885
S.W.2d 96, 100 (Tex. 1994). Likewise, that one is working as a Avolunteer@ does
not preclude respondeat superior liability, at least as to private parties, if
the employer had a right to direct the duties of the volunteer and an interest
in the work to be accomplished, accepted direct or indirect benefit from the
work, and had a right to fire or replace the volunteer.  Doe v. Boys Clubs of Greater Dallas, Inc.,
868 S.W.2d 942, 950 (Tex. App.CAmarillo 1994), aff=d, 907
S.W.2d 472 (Tex. 1995); see Restatment
(Second) of Agency ' 225 (1958).    





[2]See
also Restatement (Second) of Agency ' 236
(1958) (AConduct
may be within the scope of employment although done in part to serve the
purposes of the servant or of a third person[.]@).  If the purpose of serving the master=s
business actuates the servant to any appreciable extent, the master is subject
to liability if the act otherwise is within the service, as where the servant
drives rapidly, partly to deliver his master=s goods, but chiefly in order
to terminate the day=s
work or to return the vehicle to the master=s premises.@  Id., cmt. b at 523-24.  





[3]The
two cases Linda relies on for the proposition that vicarious liability exists
by reason of the contractual control retained by VPSI and the Transportation
Authority are inapposite.  Texas
Department of Transportation v. Able, 35 S.W.3d 608 (Tex. 2000), involved
whether two governmental units possessed an equal right Ato a
voice in the direction of an enterprise@ as a necessary element of @joint
enterprise@
liability.  Murk v. Scheele, 120
S.W.3d 865 (Tex. 2003), involved the extent of control by a governmental unit
sufficient to bring a physician within the definition of Aemployee@
under the Texas Tort Claims Act.  The
nature of the control required either for joint enterprise liability or
sovereign immunity is entirely different from the control necessary to impose
vicarious liability for negligence of an independent contractor.