Steven WALTERS, Appellant,

v.

ALLWAYS AUTO GROUP, LTD. d/b/a Atascosa Chrysler Dodge Jeep Ram, Appellee.

NUMBER 13-15-00329-CV

Court of Appeals of Texas, Corpus Christi–Edinburg.

Delivered and filed January 14, 2016.

220

Thomas J. Henry, Russell W. Endsley, The Law Offices of Thomas J. Henry, Corpus Christi, TX, for Appellant.

Ronald E. Mendoza, Davis, Cedillo & Mendoza, Inc., San Antonio, TX, for Appellee.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Justice Rodriguez

Appellant Steven Walters brought a negligence action against William John Heyden to recover damages for personal injuries arising out of an automobile collision.[1] Walters then sued appellee Allways Auto Group, Ltd. d/b/a Atascosa Chrysler Dodge Jeep Ram ("Allways") for negligently entrusting Heyden with the vehicle involved in the accident. Allways filed a traditional motion for summary judgment, arguing that Heyden's actions served as an unforeseeable superseding cause that removed Allways from the chain of proximate causation as a matter of law. The trial court granted Allways' motion and severed the Allways action in order to finalize the judgment.

On appeal, Walters raises five issues, which we construe as two issues. By his first issue, Walters argues that in a negligent entrustment claim, the plaintiff is not required to make an independent showing that the negligence of the entrusting owner proximately caused the damages. Walters reasons that because no proximate cause showing is required, a negligent entrustment suit is not susceptible to attack on the ground of superseding cause. Walters next argues that, even if the plaintiff is required to show that the owner's negligence proximately caused the harm, issues of material fact remain as to proximate causation. Because we agree with Walters' second issue, we reverse and remand.

## I. BACKGROUND

It is undisputed that on September 10, 2012, Walters was driving eastbound on Highway 72, crossing the bridge over the Frio River just outside of Three Rivers, Texas. Heyden was driving westbound over the same bridge in a vehicle loaned to him by Allways. Heyden swerved into Walters' lane, causing a head-on collision. Heyden testified at his deposition that, at the scene, he told investigating officers that he had stooped to pick his cell phone up off the floor of his cab and had accidentally strayed into Walters' lane.[2] Both men were flown by helicopter to University Hospital in San Antonio for emergency medical care. Blood samples drawn at the hospital revealed that Heyden had a blood alcohol level of at least 0.147. Heyden was subsequently convicted of the criminal offense of intoxication assault, for which he is currently serving a ten-year sentence. *See* TEX. PENAL CODE ANN. § 49.07 (West, Westlaw current through 2015 R.S.).

This was not the first time that Heyden had driven under the influence of alcohol.

---

1. Heyden is not a party to this appeal.

2. Walters submitted excerpts of Heyden's deposition as evidence in support of his summary judgment response.

Heyden's driving records show that he had been cited for driving under the influence in October 2009 by the police department of Lamont, Illinois, where he resided at the time. After moving to Texas, Heyden was arrested in February of 2012 for driving with a blood alcohol content greater than 0.15. As a result, Heyden was required to surrender his Illinois driver's license to the State of Texas, and he was issued a paper Texas driver's license. On August 5, 2012, Heyden was involved in a collision near Palmer, Texas and was arrested for Driving While Intoxicated (DWI) as a result. Heyden testified in his deposition that he was required to surrender his Texas license at the time of the arrest. The exact status of Heyden's license at the time of the collision at issue is not clear from the record and is disputed by the parties.

At his deposition, Heyden testified that the August 2012 DWI collision totaled his vehicle, which led him to visit Allways to purchase a new car. Heyden spoke with an Allways salesman named Larry Montes and eventually selected a 2008 Dodge Caliber for purchase. As part of the paperwork, Montes asked Heyden for his driver's license and insurance. Heyden told Montes that his Illinois driver's license had been surrendered to the State of Texas and that he did not yet have a valid Texas driver's license, but that he would obtain one soon. However, Heyden presented Montes with a photocopy of the Illinois license, and claimed that despite his surrender of the Illinois license, this photocopy was a valid license. Heyden testified that Montes made a photocopy of this photocopy and filed it with the paperwork for the transaction, which was completed on

August 22—the same day that Heyden walked into the dealership.

Some days later, Heyden was driving the Dodge Caliber when the vehicle broke down and coasted to a stop at a gas station. Heyden called Allways, who agreed to tow the vehicle in for repair and offered to loan Heyden a vehicle in the meantime. Heyden purchased a six-pack of beer from the gas station and consumed all of it before he arrived at the Allways facility in the tow truck.[3] Heyden testified that Allways had the loaner vehicle ready when he arrived at the dealership and that Allways did not ask to see his license.

Montes stated in an affidavit that he met Heyden when he arrived at the dealership.[4] Montes averred that Heyden did not appear to have been drinking, did not exhibit any signs of intoxication, and drove away from the dealership without incident. However, Heyden testified that he believed that he was legally intoxicated at the time he arrived at Allways and would not have passed a breathalyzer test. He testified that in general, he made an effort to conceal his drinking habits and intoxication, but did not hide it well.

Heyden testified that in the next two weeks, he drove drunk almost every day. Word of Heyden's drinking habits reached Heyden's supervisors at the oilfield where he worked, and on September 10, 2012, Heyden was fired for drinking on the job.

Heyden testified that on the day he lost his job, he purchased a bottle of whiskey and a twelve-pack of beer. Heyden worked his way through the alcohol while driving aimlessly. While crossing the bridge over the Frio River on Highway 72, he suddenly decided to end his life by

---

3. It is not clear from the record whether Heyden finished the six-pack before the tow truck picked him up or while riding in transit to the Allways dealership.

4. Allways attached Montes' affidavit in support of its motion for summary judgment.

driving off the bridge. In response to questioning by Walters' attorney, Heyden testified:

HEYDEN: When I noticed that I was driving on that bridge on Highway 72, I think, basically, I said F it, and I was going to jerk the wheel and go off the bridge. I didn't mean to hurt anybody else.

COUNSEL: Right. You were trying to commit suicide when this happened?

. . . .

HEYDEN: Yes. Yes.

Heyden swerved across traffic, headed for the railing, but collided with Walters' vehicle before he could reach his destination. Walters subsequently filed suit, first against Heyden for negligence, and then against Allways for negligent entrustment. Allways moved for summary judgment on the ground that Heyden's suicide attempt was a superseding cause as a matter of law. The trial court granted the motion, severed Walters' action against Allways, and rendered a final judgment. This appeal followed.

## II. DISCUSSION

In its motion for summary judgment, Allways argued that Heyden's suicide attempt conclusively prevented Walters from establishing "the requisite element of causation for his claim of negligent entrustment. On the day of the accident, Heyden intentionally drove the vehicle Allways had loaned him into oncoming traffic intending to end his life. His intentional acts were unforeseeable, and are a superseding cause of Allways' alleged negligence . . . ."

By his first issue, Walters argues that the elements of a negligent entrustment claim do not require him to show that Allways' negligence was a proximate cause of the collision, and that he is therefore not susceptible to summary judgment on the grounds that a superseding cause prevents him from showing proximate causation as to Allways. Because our determination of whether to accept or reject this argument will establish the elements and framework for this case, we address it first.

### A. Negligent Entrustment and Proximate Causation

■ To prove a claim of negligent entrustment, the plaintiff must show: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known was unlicensed, incompetent or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence was a proximate cause of the accident. *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987).

■ Proximate cause has two elements: cause in fact and foreseeability. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992) (op. on reh'g). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex.2004); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex.2001).

■ Foreseeability means the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act created for others. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). Foreseeability does not require that a person anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence. *Travis*, 830 S.W.2d at 98. Instead, foreseeability requires only that the general danger, not the exact sequence of events that produced

the harm, be foreseeable. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *see Lee Lewis Constr.,* 70 S.W.3d at 785.

Walters argues that in a negligent entrustment claim, the plaintiff is not required to show that the owner's negligence was the cause in fact or the foreseeable source of the collision. Walters cites the Texas Pattern Jury Charge for negligent entrustment, which tracks the elements from *Schneider, supra,* and does not mention any requirement to show that the entrusting owner proximately caused the harm. *See* Comm. on Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury Charge 10.12 (2015); *Schneider,* 744 S.W.2d at 596. Walters further cites cases holding that if an owner negligently entrusts his vehicle to an incompetent driver who proximately causes injury, the plaintiff need not independently establish the owner's proximate causation. *See, e.g., Mundy v. Pirie–Slaughter Motor Co.,* 146 Tex. 314, 206 S.W.2d 587, 590 (1947); *Arias v. Aguilar,* 515 S.W.2d 313, 316 (Tex. App.–Corpus Christi 1974, no writ).

It is true that at one point, at least nominally, Texas cases only required a plaintiff to show that the entrusted driver's negligence proximately caused the harm, and did not require the plaintiff to directly show that the entrusting owner proximately caused the harm. *See Spratling v. Butler,* 150 Tex. 369, 240 S.W.2d 1016, 1017 (1951) ("If, after the automobile is entrusted to such driver, he operates it negligently, and [the driver proximately] causes damages to a third person, the causal connection is shown between the negligence of the owner in lending him the automobile and the damage to the third person.").

However, even in the early cases of the *Spratling* era, Texas courts applied a *de facto* proximate cause analysis to negligent entrustment claims. For instance, several early Texas cases held that where an owner "A" entrusts a vehicle to "B," and B in turn loans the vehicle to an incompetent driver "C" who is unknown to the original entrusting owner, the owner A cannot be held liable when C's incompetence causes harm on the road. *See McCarty v. Purser,* 379 S.W.2d 291, 294 (Tex.1964); *Hanson v. Green,* 339 S.W.2d 381, 383 (Tex. Civ.App.–Texarkana 1960, writ ref'd) (expressly requiring proximate cause in such a situation); *Barnes v. Zinda,* 464 S.W.2d 501, 503 (Tex.Civ.App.–Waco 1971, writ ref'd n.r.e.). As the *Hanson* opinion makes clear, this rule is partly rooted in the foreseeability aspect of proximate causation: because owner A had no reason to know of C's unfitness, the claim failed under the foreseeability element. *See* 339 S.W.2d at 383. In *Schneider,* the Texas Supreme Court formalized this foreseeability requirement: "an owner should be shown to be reasonably able to anticipate that an injury would result as a natural probable consequence of the entrustment." 744 S.W.2d at 596.

To be sure, *Spratling*'s holding still has force. When an owner knows or should know that he is putting an incompetent driver behind the wheel, the owner has helped create a foreseeable and continuous risk to those who share the road with the incompetent driver, and the proximate force of the owner's initial negligent act is steadily maintained. *See LaRoque v. Sanchez,* 641 S.W.2d 298, 300 (Tex.App.–El Paso 1982, writ ref'd n.r.e.) (holding that the interval of time/distance between the initial entrustment and the ultimate collision were immaterial to a negligent entrustment action); *see also Spratling,* 240 S.W.2d at 1017.[5]

5. The continuity of the risk is demonstrated by a key piece of causation evidence in negligent entrustment actions: the driver's record. *See TXI Transp. Co. v. Hughes,* 306 S.W.3d

But this does not mean that the plaintiffs burden on proximate cause is eliminated or even lessened; rather it means that the evidence required to show the owner's proximate causation will differ in type from evidence showing the driver's proximate causation. For example, an owner's proximate causation might be shown through foreseeability evidence of warning signs that should alert a reasonably prudent owner of the need to investigate the driver's competency, *see Nobbie v. Agency Rent–A–Car, Inc.*, 763 S.W.2d 590, 592 (Tex.App.–Corpus Christi 1988, writ denied), or evidence that the owner failed to fulfill a special duty to investigate an entrustee's background even without any warning signs. *See generally Morris v. JTM Materials, Inc.*, 78 S.W.3d 28 (Tex. App.–Fort Worth 2002, no pet.) (considering a negligent entrustment claim in light of the special driver-screening requirements of the Federal Motor Carrier Safety Regulations); *see also Ruiz v. Guerra*, 293 S.W.3d 706, 721–22 (Tex.App.–San Antonio 2009, no pet.) (same).

■ Because the plaintiff must make some showing that the owner's negligent entrustment proximately caused the collision, we hold that a plaintiff's claim is susceptible to attack on the grounds of superseding cause, which operates to destroy the element of proximate causation.

Thus, with the proper elements in view, we overrule Walters' first issue and move to his second.

### B. Superseding Cause

By his second issue, Walters argues that even if a negligent entrustment claim is susceptible to challenge on the ground of

superseding cause, fact issues remain as to whether Heyden's suicide attempt was a superseding cause that destroys the chain of causation between Allways and the collision.

#### 1. Standard of Review

We review summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *Id.* A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005); *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007). The function of summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (citing *Gulbenkian v. Penn* 151 Tex. 412, 252 S.W.2d 929, 931 (1952)).

#### 2. Applicable Law

■ Even where a defendant's actions would be considered a substantial factor and a but-for cause of harm, the defendant

---

230, 240 (2010). The driver's record offers probative value by showing any pattern of incompetence or propensity for carelessness that is gradually revealed over the course of several months or years. *See Nobbie v. Agency Rent–A–Car, Inc.*, 763 S.W.2d 590, 593

(Tex.App.–Corpus Christi 1988, writ denied) (consulting records dating back seven years to conclude that there was no cause in fact). Such a propensity is not remedied overnight, but poses a continual risk until the incompetence is cured.

may be relieved of liability where there is a "superseding cause"—a third party or a force that is beyond the defendant's anticipation or control, which intervenes and destroys the causative chain between the defendant and the harm. *See Morris*, 78 S.W.3d at 53–54. Factors to be considered in determining whether an intervening force rises to the level of a superseding cause are:

(1) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(2) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(3) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(4) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(5) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(6) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex.1999) (quoting Restatement (Second) of Torts § 442); *Humble Oil & Ref. Co. v. Whitten*, 427 S.W.2d 313, 315 (Tex. 1968). "A claim for negligent entrustment cannot lie if the risk that caused the entrustment to be negligent did not cause the collision." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241 (Tex.2010).

As a general rule, the intentional criminal or harmful conduct of a third party will often serve as a superseding cause that extinguishes the liability of the previous actor. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). However, when the third party's criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex.1985). A defendant who seeks to negate foreseeability on summary judgment must prove more than that the intervening criminal conduct occurred. *Phan Son Van*, 990 S.W.2d at 754. The defendant has the burden to prove that the conduct was not foreseeable. *Id.* When a defendant presents evidence that the plaintiff's injuries resulted from intervening criminal conduct that rises to the level of a superseding cause based on considerations like those in section 442, the defendant has negated the ordinary foreseeability element of proximate cause. *Id.* The burden then shifts to the plaintiff to raise a fact issue by presenting controverting evidence that the criminal conduct was foreseeable. *Id.*

### 3. Analysis

Analyzed under the factors articulated in Restatement Section 442, Allways has not carried its burden to conclusively show that Heyden's conduct was an unforeseeable superseding cause as a matter of law. *See id.*; *Am. Tobacco Co.*, 951 S.W.2d at 425. Instead, the evidence shows that the "harm caused by [Heyden's] driving while intoxicated on the date of the accident is the kind that could result from the negligent [entrustment] of someone with DWI" arrests. *See Morris*, 78 S.W.3d at 55 (citing *Phan Son Van*, 990 S.W.2d at 754 and RESTATEMENT (SECOND) OF TORTS § 442(1)). Allways has not introduced evidence showing that a DWI colli-

sion was an extraordinary rather than normal consequence of lending a vehicle to a man who was intoxicated at the time, who appeared to have had his license revoked, and who was unable to present the dealership with a valid license when purchasing a vehicle to replace the one he had totaled in a recent DWI collision. *See Phan Son Van*, 990 S.W.2d at 754; *see also* Restatement (Second) of Torts § 442(2–3). Taking as true all evidence favorable to Walters and indulging all reasonable inferences in his favor, *see Am. Tobacco Co.*, 951 S.W.2d at 425, we cannot conclude that Allways presented evidence which conclusively establishes that Heyden's conduct rises to the level of a superseding cause that was unforeseeable as a matter of law. Instead, reasonable minds could differ as to the conclusion to be drawn from the evidence before us. *See City of Keller*, 168 S.W.3d at 816; *see also Mayes*, 236 S.W.3d at 755.[6]

Texas courts routinely hold that proximate causation is a fact question within the province of the jury. *Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 656 (Tex.

---

**6.** Beyond the issue of superseding cause, Allways' summary judgment motion disclaimed any intention to argue the general issue of foreseeability—i.e., whether Allways had any notice of Heyden's recklessness, incompetence, or license issues. Indeed, Allways stated that this issue was "irrelevant" because Heyden's suicide attempt was a superseding cause as a matter of law. Therefore, based on its presentation, this argument is not properly before this Court. *See Guevara v. Lackner*, 447 S.W.3d 566, 571 (Tex.App.–Corpus Christi 2014, no pet.) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993)); *see also* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor.").

Nonetheless, when evaluating which arguments Allways properly raised in the summary judgment motion, we may look to the substance of the authorities cited by the movant. *See Nat'l City Bank of Indiana v. Ortiz*, 401 S.W.3d 867, 876 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (looking to the substance of the authorities cited in a summary judgment motion to determine which arguments were properly raised at the summary judgment stage). Despite their disclaimer, Allways' motion did cite multiple cases dealing with the general topic of proximate cause rather than the specific issue of superseding cause.

Thus, we address this issue here in short: even assuming *arguendo* that Allways had formally brought this notice-oriented argument before the trial court, fact issues remain as to proximate cause. The matter has not been conclusively established because reasonable people could differ as to the conclusion to be drawn from the evidence—for example, whether Allways had notice of Heyden's use of alcohol and license issues, and whether his alcoholism contributed the impetus for the suicide attempt and the poor execution of that attempt. *See City of Keller*, 168 S.W.3d at 816; *see also Mayes*, 236 S.W.3d at 755.

When Heyden came to purchase a new car after totaling his prior vehicle in a DWI collision, Heyden told Allways that his Illinois driver's license had been forfeited to the State of Texas. There is no evidence that Allways attempted to verify the status of this license. Heyden testified that on the night Allways entrusted him with a rental car, he was too intoxicated to drive, and that he generally did not conceal his intoxication well. *See Revisore v. W.*, 450 S.W.2d 361, 364 (Tex.Civ. App.–Houston [14th Dist.] 1970, no writ). The contrary evidence—specifically, an interested-party affidavit by the Allways salesman Larry Montes—is not entitled to the same favorable light for the purposes of summary judgment. *See Nixon*, 690 S.W.2d at 549; *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex.2003) (describing the special, credibility-oriented requirements that are placed on the affidavits of interested witnesses before they may support summary judgment). This affidavit was disputed, and does not conclusively negate the proximate cause element of Walters' claim. Viewing the evidence in the light most favorable to the nonmovant Walters and indulging all reasonable inferences in his favor, Allways has not conclusively negated the foreseeability prong of the proximate cause element of Walters' claim. *See Am. Tobacco Co.*, 951 S.W.2d at 425.

App.–Corpus Christi 1993, writ withdrawn) (citing *Ramey v. Collagen Corp.*, 821 S.W.2d 208, 212 (Tex.App.–Houston [14th Dist.] 1991, writ denied)). Accordingly, we conclude that the trial court erred in granting summary judgment. We sustain Walters' second issue.

## IV. CONCLUSION

We reverse the judgment of the trial court and remand.